Argued June 27, reversed and remanded July 17, 1917.

# DAVIS v. LIVERPOOL & LONDON & GLOBE INS. CO.*

(166 Pac. 534.)

**Attorney and Client—Client's Liability for Expenses Incurred by Attorney—Sufficiency of Evidence.**

1. Evidence *held* insufficient to warrant recovery for services performed by plaintiff at request of defendant's attorney in obtaining evidence in a suit by defendant, where the attorney had no authority to employ plaintiff, and his fees and expense account were specifically limited, and defendant not having ratified the account, nor having been informed of it.

[As to implied authority of attorney to incur expense for client to pay, see note in 132 Am. St. Rep. 161.]

**Attorney and Client—Client's Liability for Expenses Incurred by Attorney—Ratification—Acceptance of Amount Collected.**

2. The mere fact that defendants accepted money recovered by their attorney would not amount to a ratification of a void contract made by attorneys with plaintiff for obtaining evidence in the suit, unless defendants knew that the attorneys had assumed to act for them in employing plaintiff.

**Attorney and Client—Client's Liability for Expenses Incurred by Attorney—Ratification—Knowledge.**

3. The mere fact that defendant may have had knowledge that plaintiff was furnishing information to defendant's attorneys and assisting them in finding testimony for defendant's suit would not be notice to defendant that plaintiff was doing it with the expectation that he would be paid by defendant out of the company's share of the amount recovered in the suit.

**Attorney and Client—Reimbursement for Attorney's Assistants.**

4. Although an attorney may employ as many assistants in a case as he chooses to pay for, his client will not be liable therefor, unless informed of the employment, and thereafter permits it to continue.

From Multnomah: ROBERT G. MORROW, Judge.

Action by Sam H. Davis against the Liverpool & London & Globe Insurance Company, a corporation, to recover for work and labor and for alleged information furnished to the defendant. From a verdict in

---

*On implied power of attorney to bind client for expenses incidental to trial, including associate counsel fees, see note in 23 L. R. A. (N. S.) 702.                                                                REPORTER.

favor of plaintiff, defendant appealed.   Reversed and remanded.

Department 1.   Statement by Mr. Chief Justice McBride.

This is an action to recover the sum of $1,800 for services performed and information furnished to the defendant.   The complaint, in substance, is as follows:

"II.   That between the 1st day of January, 1908, and the 1st day of January, 1911, at the special instance and request of defendant, plaintiff furnished to defendant certain information and performed certain services, of the reasonable value of $1,800.34; that the same became due and payable during the year 1910, and prior to January 1, 1911; that said services so rendered by plaintiff to defendant between the dates mentioned constituted a continuous employment and a continuous and running account, and did not mature until all of said services has been fully performed. * * IV. That the information so furnished and the services performed by plaintiff for the defendant, as mentioned in paragraph 'II' of this complaint, consisted of the following, to wit: That about the year 1904 the defendant had paid to Lipman, Wolfe & Company, at Portland, Oregon, on certain fire insurance policies issued by the defendant to said Lipman, Wolfe & Company, amounting to $20,200, a loss caused by fire and water, which said loss was incorrectly and by mistake adjusted on said policies at $7,153.72, and said defendant had paid the said sum to said Lipman, Wolfe & Company, as a settlement of said loss under the policies issued by defendant to said Lipman, Wolfe & Company, and aggregating a total of $20,200; that said amount was paid by mistake and by reason of an inaccurate adjustment of the loss sustained by said Lipman, Wolfe & Company, and that plaintiff was in possession of certain information with which to establish that fact; that plaintiff furnished said information, and in addition thereto procured the affidavits of George Hewitt, Herman Grim, Alexander Graham, and

R. C. Baker, and also certain other information, for and on behalf of the defendant, and by reason of said information and of said affidavits so obtained by plaintiff for defendant and by reason of said services rendered by plaintiff to defendant, said defendant was repaid by said Lipman, Wolfe & Company the sum of $5,401.05 of said original payment of $7,153.72, which said $5,401.05 has previously been paid by defendant to Lipman, Wolfe & Company as aforesaid."

Defendant answered by a general denial. There was a jury trial and verdict for the plaintiff for $750, from which defendant appeals. Additional facts appear in the opinion. REVERSED AND REMANDED.

For appellant there was a brief over the names of *Messrs. Magill, McKenney & Brush* and *Mr. C. W. Fulton*, with an oral argument by *Mr. W. F. Magill*.

For respondent there was a brief over the names of *Mr. Gus C. Moser* and *Mr. Roy K. Terry*, with an oral argument by *Mr. Moser*.

Opinion by MR. CHIEF JUSTICE MCBRIDE.

1-4. The testimony introduced by plaintiff tended to show that in the year 1903 plaintiff was in the employ of Lipman, Wolfe & Company, that a fire occurred in its store whereby goods of considerable value were damaged, and that upon an adjustment of the losses the defendant, who, with other companies, was an insurer of the stock of goods owned by Lipman, Wolfe & Company, paid that firm the sum of $7,153.72 as its share of said loss. At the time the fire occurred plaintiff was in the employ of Lipman, Wolfe & Company and assisted in the adjustment. In 1908 he informed Mr. Treanor, who had acted as adjuster of losses between the parties, of the fact that the losses had been

over-estimated and that incorrect and fraudulent claims had been made with respect thereto; and at the suggestion of Treanor, who had no authority to act for defendant, he procured the affidavits of several persons in the employ of Lipman, Wolfe & Company in regard to the amount of the damages and gave them to John C. Shillock, an attorney of Portland, who laid them before the companies, including defendant, which had paid losses alleged to have been sustained at the fire. As a result of this information a committee was appointed by the companies interested to investigate the charges contained in the affidavits and to take such steps as might be necessary, if deemed advisable, to recover any amount over-paid on account of such losses. The result was a tentative agreement with Shillock and John F. Logan to attempt to recover the sums over-paid upon the basis of recovering fifty per cent of the amount that might be recovered; the committee agreeing to advance $100, and no more, as expenses of the investigation. Plaintiff had no communication with the committee, but was working with Logan and Shillock upon some understanding that he was to recover 25 per cent of the fee that they should collect, and was exceedingly active in urging action in the matter. Later Mr. Granger, an attorney of Seattle, was consulted by the committee, which informed him of its tentative arrangement with Shillock and Logan and intimated a desire that he should assist said attorneys, but said that it would not feel justified in paying any other sum above fifty per cent of the amount recovered. The result was that Granger saw Logan and Shillock and was accepted by them as co-counsel upon terms which are left in doubt by the evidence; but there is no testimony indicating that the committee ever agreed to any different terms

as to compensation than fifty per cent of any amount which should be recovered. Granger met plaintiff at Shillock's office and conversed with him about the matter, which ran along until 1909, when Shillock and Logan retired from the case, leaving Granger in charge. In March, 1909, plaintiff testifies that he met Mr. Gallegos, chairman of the underwriters' committee, in Shillock's office; that Gallegos asked him about the standing of the witnesses who had made the affidavits and said he had read them and knew their contents. The only testimony given by plaintiff of any changes in the method of his employment from the time when he had his conversation with Shillock, which he claims left his compensation indefinite, is practically summed up in the following excerpt from his testimony on direct examination:

"Q. Before you get through with that I will ask you to state whether or not while Mr. Shillock was handling the matter for the insurance companies there was ever any conversation with reference to compensation for your services in getting these other witnesses?

"A. There was never any distinct understanding. He talked sometimes—one time he talked about I was entitled to one-third of what they recovered. After Mr. Granger come in he told me he would have to take care of Mr. Granger, and have to cut my proportion down with his, but he would not make any direct amount for me to receive.

"Q. After having had that conversation with Shillock, you say you had this conversation with Granger in the Oregon Hotel when he told you to have nothing more to do with Shillock. Did you have any conversation at that time with Granger—Mr. Granger, pardon me—with reference to your getting any compensation for bringing these—getting these witnesses?

"A. I did.

85 Or.—10

"Q. What was that, as near as you can remember?

"A. Well, Mr. Granger says, 'Of course, you will have to take my word for it, because if you go on the stand, and they ask you the question if I have made any contract, or any written statement regarding a certain amount I want you to say, "No," that I have not.' 'Well,' I says, 'I don't know. I believe you are a gentleman, and I will take your word for it'; and I said, 'I will take a chance, anyway.' He said, 'You will find I am all right.'

"Q. Did you ever at any time ask him or anybody else for any money for your own testimony?

"A. I never did.

"Q. Did you ask them for compensation for the work in getting these other men with whom you were familiar, and concerning whom you knew what they knew about the fire?

"A. I did."

Later Mr. Granger suggested to Judge Webster that he should act with him in the collection of the claim against Lipman, Wolfe & Company and had plaintiff go to Judge Webster's office and detail what he and the witnesses he had interviewed knew about the facts. A knowledge of the existence of this testimony being communicated to Lipman, Wolfe & Company they settled the claim by paying back to the Associated Assurance Companies the sum of $25,000. Granger and Emmons & Webster retained approximately fifty per cent as fees and expenses, paying over to the insurance companies $12,500, out of which the defendant received $5,401.05 as its share. The evidence indicates that this amount was obtained largely, if not wholly, by reason of the information furnished by plaintiff and the evidence collected by him. Some of the testimony given by plaintiff was contradicted by other witnesses, but here we must assume that the facts are as plaintiff states them. It

goes without saying that neither Logan and Shillock nor Granger had any authority by virtue of their retainer to employ plaintiff to collect evidence or assist them in the case. Their fee was limited to fifty per cent of the amount collected and their expense account to $100, as plaintiff was informed, and even if he had not been so informed, the result would be the same. There is nothing in the evidence which indicates that the companies or their committee were aware that Shillock or Granger had assumed to employ him or contract with plaintiff on the companies' account, and much to indicate that they were precluded from doing so and that plaintiff knew it. The mere fact that they accepted the money collected by the attorney would not amount to a ratification of the void contract made by such attorneys, if any were made, unless they knew that the attorneys had assumed to act for them in employing plaintiff, and there is absolutely nothing here to indicate that such was the case. They had agreed with Shillock as to what his fee should be and as to how much expense he should incur on their account, and they had a right to assume that he and the other attorneys having nearly an equal interest in the recovery would not exceed their instructions and incur a liability of many hundred dollars beyond that limit. The mere fact that defendant may have known that plaintiff was furnishing information to the attorneys and assisting them in finding testimony would not of itself be notice to them that he was doing it with the expectation that he would be paid out of the company's share of the amount recovered. An attorney is at liberty to employ as many assistants in a case as he chooses to pay for, but the employment of such assistance is not a charge against his client, unless the client is informed that they are employed on his credit

and with that knowledge permits the employment to continue.

The judgment will be reversed and the cause remanded to the court below for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

MR. JUSTICE BURNETT, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.