786 F.2d 1353
 1986-1 Trade Cases 67,150
 Joseph HAHN, Wade Liggett, Joseph Aizawa, V.G. Livingston,
and D. Hugh Fraser, Plaintiffs-Appellees,
v.
OREGON PHYSICIANS' SERVICE, an Oregon nonprofit corporation,
and Physicians' Association of Clackamas County,
an Oregon nonprofit corporation,
Defendants-Appellees,
v.
Henry KANE, Claimant-Appellant.
John HAHN, V.G. Livingston, Hide Aizawa and D. Hugh Fraser,
Plaintiffs-Appellees,
v.
Josephine M. DRISCOLL, Acting Insurance Commissioner of the
State of Oregon, and Portland Metro Health, Inc.,
an Oregon nonprofit corporation,
Defendants-Appellees,
v.
Henry KANE, Claimant-Appellant.
Lawrence HELTON, David Hoyal, Wade Liggett, Elmer Dorr, Hide
Aizawa, and Jeffrey L. Widen, Plaintiffs-Appellees,
v.
ROGUE VALLEY PHYSICIANS' SERVICE, an Oregon nonprofit
corporation; and Klamath Medical Service Bureau,
an Oregon nonprofit corporation,
Defendants-Appellees,
v.
Henry KANE, Claimant-Appellant.
Lawrence HELTON, David Hoyal and Jeffrey Widen, Plaintiffs-Appellees,
v.
GREATER OREGON HEALTH SERVICES, INC., Defendants-Appellees,
v.
Henry KANE, Claimant-Appellant.
 No. 84-3546.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 11, 1985.
Decided Nov. 27, 1985.
Designated for Publication April 15, 1986.
 
 1
 Daniel F. Mullin, Bassett & Morrison, Seattle, Wash., for plaintiffs-appellees.
 
 
 2
 Henry Kane, Beaverton, Or., pro se.
 
 
 3
 Appeal from the United States District Court for the District of Oregon, Portland.
 
 
 4
 Before BROWNING and ALARCON, Circuit Judges, and STEPHENS*, District Judge.
 
 STEPHENS, District Judge:
 
 5
 The appellees in this case, plaintiffs in the district court, are doctors of podiatric medicine who practice in the State of Oregon. They asserted antitrust claims against several defendants, including health care contractors, indemnity insurers and health maintenance organizations. In contemplation of bringing suit, the doctors contacted an attorney, William King, who recommended that a corporation called The Fair Action Committee for Education, Inc. (FACE), be formed for the purpose of bringing suit on behalf of the individual podiatrists. King proceeded to organize FACE and arrange for the assignment of the plaintiffs' individual antitrust claims to the corporation.
 
 
 6
 On July 14, 1985, FACE, through its president, Hahn, entered into a retainer agreement with King (Retainer Agreement) for the prosecution of the antitrust action. The Agreement provided for a $6,000 retainer fee to be paid to King as well as a fee in an amount equal to 50 percent of the total sum recovered by settlement or judgment. The agreement also authorized King to associate attorneys to assist him in the litigation. King brought four separate actions in the district court on behalf of FACE. These actions were consolidated by the court on April 23, 1979.
 
 
 7
 On July 26, 1979, King and Hahn, on behalf of FACE, executed a First Addendum to Retainer Agreement. Paragraph III of the Addendum states:
 
 
 8
 In no event shall Attorney's fees payable or paid either to Mr. King or to any other counsel, including but not limited to attorneys associated by Mr. King to assist in this litigation be defined or determined as costs of litigation herein. All expenses incurred incident to association of trial counsel other than Mr. King shall be the sole responsibility of Mr. King, notwithstanding the fact that Client has agreed that Attorney may associate other attorneys to assist in this litigation.
 
 
 9
 The appellant, Henry Kane, had associated with King by written agreement dated July 27, 1978. This agreement provided that appellant would be paid two-thirds of his hourly fee, to a maximum of $100,000, plus 25% of any recovery by King under the Retainer Agreement, so long as appellant continued to assist in the prosecution of the antitrust claims. FACE and the individual podiatrists were not parties to this agreement.
 
 
 10
 King and appellant acted as attorneys for FACE until October 19, 1979, when both lawyers moved the court for permission to resign as counsel for plaintiffs and filed notices of attorneys liens. On October 22, 1979, the court permitted both attorneys to resign, but specifically refrained from making a decision regarding the propriety of the liens.
 
 
 11
 Neither King nor appellant worked on the case after October of 1979. King was subsequently disbarred from the practice of law and is not involved in the present appeal. King also went through bankruptcy proceedings in which appellant was named an unsecured creditor, and in which his claim for fees was discharged.
 
 
 12
 Another law firm was substituted as counsel of record for the podiatrists after King and appellant withdrew from the case, and FACE reassigned all claims back to the individual doctors. The corporation was then liquidated. The individual podiatrists were substituted as real parties in interest in the litigation by means of a Second Amended Complaint.
 
 
 13
 On October 20, 1983, the district court conducted a hearing in chambers on the issue of attorneys fees, and after argument, took the matter under advisement. On December 9, 1983, the district court vacated appellant's attorneys lien and disallowed any amounts for attorneys fees. After motion by appellant, the court entered an Amended Judgment on December 13, 1983, indicating that there was no reason to delay the entry of final judgment on the attorneys fees claim, thereby enabling appellant to file an appeal. See Federal Rule of Civil Procedure 54(a) and (b).
 
 
 14
 Appellant contended that he has a right to a contingency share of any settlement or judgment in this case because he was a party to the original Retainer Agreement. He based this contention on the language of the Agreement itself, and on the content of the written agreement between him and King. Appellant received full payment for his work billed at the hourly rate from King, so this leaves only his right to a 25% contingency share of the ultimate recovery in the case to be determined.
 
 
 15
 The interpretation of a contract is a mixed question of fact and law which we review de novo. See Marchese v. Shearson Hayden Stone, Inc., 734 F.2d 414, 417 (9th Cir.1984); In re United States Financial Securities Litigation, 729 F.2d 628, 631-32 (9th Cir.1984). Appellant's arrangement for fees was contained solely in the agreement he executed with King, which expressly provided that King would retain overall direction and control of the case. The First Addendum to the Retainer Agreement very clearly reflects the intention of King and the doctors that any attorneys associated in the case would look exclusively to King for the payment of their fees.
 
 
 16
 Although appellant had a claim to a part of King's share in the ultimate recovery in this case, he had no claim to the recovery before distribution to King. We conclude that, because no independent contract between appellant and the doctors ever existed, appellant does not have a right to a lien against the doctors' recovery in this case even though his proper recourse for fees has been cut off as a result of King's bankruptcy.
 
 
 17
 Appellant claimed that, even if he did not have a right to a lien for fees under a direct agreement with the doctors, he is entitled to the reasonable value of his services in quantum meruit to the date of his withdrawal from the case under Oregon Revised Statute 87.445, which reads:
 
 
 18
 An attorney has a lien upon actions, suits and proceedings after the commencement thereof, and judgments, decrees, orders and awards entered therein in his client's favor and the proceeds thereof to the extent of his fees and compensation specially agreed upon with his client, or if there is no agreement, for the reasonable value of his services.
 
 
 19
 "The purpose of quantum meruit is to prevent unjust enrichment at the expense of another." Schroeder v. Schaefer, 258 Or. 444, 483 P.2d 818, 820 (1971). But recovery in quantum meruit is not appropriate where there is a valid contract covering the subject matter of the dispute. Kashmir Corp. v. Patterson, 43 Or.App. 45, 602 P.2d 294, 296, aff'd 289 Or. 589, 616 P.2d 468 (1979). (Quantum meruit count in complaint properly stricken where plaintiff pleaded contract in complaint, defendant admitted existence of contract, and agreement held enforceable.) The operative contract in this instance is appellant's agreement for fees with King, which conclusively establishes that appellant's claim was properly against King, not against the doctors.
 
 
 20
 To maintain an action in quantum meruit, a party must not only show unjust enrichment, but also an expectation of pay from the party so charged. See Davis v. Liverpool & London Globe Insurance Co., 85 Or. 141, 166 P. 534, 536 (1917). As stated in Volume 7A, C.J.S., Attorney and Client, Section 297 (West, 1980):
 
 
 21
 [N]either knowledge and acquiescence, nor consent by the client, is sufficient to make the client liable, in the absence of circumstances from which it can be inferred by the client that the fees are to be paid for by him.
 
 
 22
 There is nothing in the record to indicate that the doctors ever expected to be accountable for appellant's fees.
 
 
 23
 The district court's order vacating appellant's lien is AFFIRMED.
 
 
 
 *
 The Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation