NOREEN J. BOSWELL *vs.* ZEPHYR LINES, INC., & another.[1]

Suffolk. October 5, 1992. - February 1, 1993.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Attorney at Law*, Lien, Attorney-client relationship, Signing of pleadings and other court papers. *Words*, "Appears."

Discussion of cases in other States considering whether an attorney hired by retained counsel to assist in the preparation of a case may assert a statutory lien to secure compensation for legal services rendered. [246-247]

The filing of a notice of appearance or the signing of motions or pleadings under Mass. R.. Civ. P. 11(b) is "appear[ing] for a client" within the meaning of that phrase as found in G. L. c. 221, § 50, the attorney's lien statute. [247-249]

In circumstances in which an attorney hired by retained counsel to assist in litigation had no substantive right of recovery against the client for fees for services rendered, either under the contingent fee agreement or in quantum meruit, the attorney's appearance for the client did not support a lien under G. L. c. 221, § 50, against the proceeds of the client's recovery. [249-251]

CIVIL ACTION commenced in the Dorchester Division of the District Court Department on July 1, 1986.

On removal to the Superior Court Department, entry of a judgment of dismissal was ordered by *Barbara J. Rouse*, J., and a motion to enforce an attorney's lien was heard by her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard J. Vita* for Dane M. Shulman.

*Camille F. Sarrouf* for Emidio DiLoreto.

LIACOS, C.J. This appeal arose out of a fee dispute between two members of the Massachusetts bar, Mr. Dane M. Shul-

_____

[1] Alan F. Fitzsimmons.

man and Mr. Emidio DiLoreto. We summarize the underlying facts, as set forth in the record, including the affidavits submitted by the parties.[2]

Between 1967 and 1989, DiLoreto and Shulman maintained a professional relationship under an oral agreement, the precise contours of which are in dispute. Shulman asserts that he employed DiLoreto on a case by case basis. Shulman contends that, pursuant to the agreement, he would compensate DiLoreto only for those cases that DiLoreto personally brought to a successful conclusion while working for Shulman. DiLoreto, on the other hand, claims that he worked as Shulman's independent cocounsel rather than as his employee. DiLoreto also contends that the oral agreement contemplated that he should receive payment regardless of which attorney settled a particular case.[3]

DiLoreto maintained his own law office throughout his relationship with Shulman. However, DiLoreto always used Shulman's law office to serve the clients whom Shulman turned over to him. All meetings between DiLoreto and these clients took place in Shulman's law office, and DiLoreto used Shulman's stationery when corresponding with the clients. Also, the name and address of Shulman's law office appeared on all the pleadings and motions which DiLoreto signed.

In July, 1989, the professional relationship between DiLoreto and Shulman ended.[4] Shulman requested that DiLoreto return the case files which Shulman had turned

---

[2]The parties shown are the original parties in a tort action. This matter has been settled, and the original plaintiff, Boswell, has received all funds due her. As will be noted, attorney's fees of $21,000 have been placed in escrow, pending the resolution of this appeal. Thus, neither Boswell nor the defendants have any further interest in this matter.

[3]Shulman and DiLoreto agree that the agreement contemplated that, when entitled to compensation, DiLoreto would receive a fee amounting to one-half the legal fees generated from any particular case.

[4]The parties disagree as to the events that triggered the termination of their relationship. While Shulman claims that DiLoreto "unilaterally and without justifiable cause" ended the relationship, DiLoreto says that he withdrew because Shulman took a course of action that DiLoreto judged "intolerable."

over to him. DiLoreto asserts that, on November 7, 1989, he returned most such files. DiLoreto also contends that Shulman authorized him to continue to work on twenty-five active cases. While Shulman acknowledges that DiLoreto returned a majority of files, Shulman also asserts that he never authorized DiLoreto to retain any case files. Shulman claims that he did not even know that DiLoreto had retained files until DiLoreto forwarded settlement checks to Shulman's office. On December 7, 1989, Shulman requested in writing that DiLoreto return all the remaining files, and DiLoreto complied.

Among the cases which DiLoreto returned was the personal injury claim that underlies the present fee dispute. On August 22, 1985, Shulman entered into a contingent fee agreement with the plaintiff, Noreen J. Boswell.[5] Pursuant to the arrangement that we described above, Shulman assigned the Boswell file to DiLoreto. On November 7, 1986, Shulman's law office filed a complaint on Boswell's behalf in the Superior Court. Shulman himself signed the complaint. Subsequent pleadings and motions were signed by one of three attorneys: Shulman, DiLoreto, or DiLoreto's daughter, Elizabeth. Regardless of which attorney signed a particular pleading or motion, the name and address of Shulman's law office appeared underneath the signature.

DiLoreto asserts that he conducted most of the pretrial work and the settlement negotiations on behalf of Boswell. On November 29, 1989, DiLoreto wrote to Boswell that the defense had offered $53,000 in settlement of her claim. DiLoreto's letter also stated that DiLoreto was likely to obtain an offer of $60,000. DiLoreto, however, returned Boswell's file to Shulman before the case settled.

Subsequently, Shulman's office settled the case, thereby obtaining the right to a contingent fee of $21,000. On December 18, 1989, DiLoreto filed an attorney's lien pursuant to G. L. c. 221, § 50 (1990 ed.). DiLoreto and Shulman filed

---

[5]The agreement provided that attorney's fees (including those of any associated counsel) would not exceed one-third of the settlement plus costs.

opposing affidavits. Based on these affidavits and on court records, but without holding an evidentiary hearing, the judge below allowed DiLoreto's motion to enforce the lien. The judge ruled that DiLoreto performed "substantial work" in the Boswell case, and that DiLoreto's signing of motions and pleadings constituted an "appearance" on behalf of Boswell. This appearance, the court held, entitled DiLoreto to an attorney's lien amounting to $10,500, or one-half of the net contingent fee. Shulman appealed this ruling to the Appeals Court, and we transferred the case on our own motion.

In Massachusetts, attorneys have a statutory right to assert a charging lien securing compensation for their legal services. G. L. c. 221, § 50. See *Elbaum v. Sullivan*, 344 Mass. 662, 663 (1962). In relevant part, the attorney's lien statute provides that "[f]rom the authorized commencement of an action, counterclaim or other proceeding in any court . . . *the attorney who appears for a client* . . . shall have a lien for his reasonable fees and expenses" (emphasis added). G. L. c. 221, § 50. DiLoreto argues that the judge properly construed this language when she held that DiLoreto's signing of some pleadings and motions constituted an "appearance" within the meaning of the attorney's lien statute. DiLoreto bases this argument on Mass. R. Civ. P. 11 (b) (1), 365 Mass. 753 (1974), which provides that the "filing of any pleading, motion, or other paper shall constitute an appearance by the attorney who signs it, unless the paper states otherwise." Such an appearance, DiLoreto argues, entitles him to recover one-half of the contingent fee generated from the Boswell case pursuant to his agreement with Shulman.

Shulman, in turn, asserts that the judge below erred in several respects. First, Shulman asserts that DiLoreto was not Boswell's attorney of record and thus did not "appear" for Boswell within the meaning of G. L. c. 221, § 50.[6]

_____

[6]It appears that Shulman is relying on the New York rule whereby a litigant may generally designate only one "attorney of record." See note 8, *infra*. Black's Law Dictionary, however, provides a broader definition of "[a]ttorney of record": "Attorney whose name must appear somewhere in permanent records or files of case, or on the pleadings or some instrument

Rather, Shulman argues that DiLoreto was his employee and "appeared" in the Boswell case, if at all, only as a representative of Shulman's law office. Shulman points out that DiLoreto did not file a notice of appearance pursuant to rule 11 (b) (2), which states that "[a]n appearance in a case may be made by filing a notice of appearance, containing the name, address, and telephone number of the attorney or person filing the notice." Further, Shulman notes that each time DiLoreto signed a pleading or a motion the name and address of Shulman's law office followed DiLoreto's signature.

Shulman also argues that the judge below erred when she established a lien in DiLoreto's favor without determining that DiLoreto had a contractual right to recover against Boswell. Shulman points out that DiLoreto was not a party to the contingent fee agreement into which Shulman and Boswell entered. Shulman argues that, in the absence of such a written retainer agreement, DiLoreto has no right to collect a fee from Boswell. See S.J.C. Rule 3:05, as appearing in 382 Mass. 762 (1981); S.J.C. Rule 3:07, DR 2-106 (C), as appearing in 382 Mass. 773 (1981). Without an underlying contractual right to recover, Shulman argues, DiLoreto may not assert an attorney's lien pursuant to G. L. c. 221, § 50. Finally, Shulman contends that, even if DiLoreto had the right to file a lien, the judge below erred when she established the lien and its amount without an evidentiary hearing

---

filed in the case, or on appearance docket. Person whom the client has named as his agent upon whom service of papers may be made. . . . An attorney who has filed a notice of appearance (e.g., through a praecipe) and who hence is formally mentioned in court records as the official attorney of the party." Black's Law Dictionary 129 (6th ed. 1990). Accord Fed. R. Civ. P. 11 ("[e]very pleading . . . of a party represented by an attorney shall be signed by *at least one attorney of record* . . . " [emphasis added]).

The definition of the term "[a]ttorney of record" provided by Black's Law Dictionary accords with the definition of what constitutes an "appearance" by an attorney in a case under Massachusetts law. See Mass. R. Civ. P. 11 (b), 365 Mass. 753 (1974). Thus, we reject the New York rule. See our discussion of the word "appearance" in the context of G. L. c. 221, § 50, *infra* at 247-248.

and on the sole basis of the affidavits and court records of the original case presented by the parties.[7]

This case requires us to determine the circumstances in which an attorney hired by retained counsel to assist in the preparation of a case may file a lien in the original action under G. L. c. 221, § 50. This issue is one of first impression in this Commonwealth, but the courts of some of our sister States have discussed this question under attorney's lien statutes presenting the same language as ours. We now turn to an examination of these decisions.

The attorney's charging lien statute of New York provides that "the attorney who appears for a party" may assert "a lien upon his client's cause of action." N.Y. Jud. Law § 475 (McKinney 1983). The New York courts have construed this language to confine the use of the statute to the attorney of record in a particular case. *Rodriguez* v. *City of New York*, 66 N.Y.2d 825, 827 (1985). See *D'Amico* v. *Nuzzo*, 138 A.D.2d 667, 668 (N.Y. 1988). While a litigant may employ additional counsel, the additional attorney may not assert a statutory lien, regardless of the extent to which he or she contributes to the litigation of a case. *Barnum* v. *Srogi*, 96 A.D.2d 723, 723-724 (N.Y. 1983).[8] Thus, where a lawyer retained by the client employs another attorney to conduct a trial, the additional attorney is not entitled to file a lien pursuant to the New York statute. *Id.*

---

[7]Shulman states that he filed a motion for summary judgment pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1976), on which the judge did not rule.

[8]A litigant may generally designate only one attorney of record under New York law. See *Polytemp, Inc.* v. *Sell*, 59 A.D.2d 938 (N.Y. 1977); *Kitsch* v. *Riker Oil Co.*, 23 A.D.2d 502, 503 (N.Y. 1965). Cf. *Kallivokas* v. *Athanasatos*, 151 A.D.2d 396 (N.Y. 1989). Where special circumstances exist, such as a situation where the interests of a single party may diverge in a proceeding, a trial judge has the discretion to allow a party to proceed with more than one attorney of record. See *Chemprene, Inc.* v. *X-Tyal Int'l Corp.*, 55 N.Y.2d 900 (1982) (counterclaim presenting issues unrelated to those posited in original complaint suggested possibility of diverging interests).

Other courts have disagreed with the New York approach. In *Nickel Rim Mines Ltd.* v. *Universal-Cyclops Steel Corp.*, 202 F. Supp. 170, 173, 175 (D.N.J. 1962), for instance, the court, applying New Jersey law, rejected the New York rule and refused to confine the use of the New Jersey attorney's lien statute to an attorney of record.[9] *Nickel Rim Mines Ltd.* involved an out-of-State attorney who, pursuant to the local rules of court, had participated in the conduct of a trial but had hired a local attorney of record to sign all pleadings and motions. The court held that, under New Jersey law, a trial counsel may file a statutory lien even if he or she is not the attorney of record. *Id.* at 175, citing *St. John the Baptist Greek Catholic Church* v. *Gengor*, 124 N.J. Eq. 449 (Ch. 1938). This rule, the court reasoned, should extend to an out-of-State attorney who participates in the conduct of a litigation but is not the attorney of record. *Nickel-Rim Mines Ltd.*, *supra* at 175. Accord *Liberty* v. *Liberty*, 226 Wis. 136, 139 (1937). The Supreme Court of Minnesota has reached a similar result. See *Meacham* v. *Ballard & Co.*, 184 Minn. 607, 612-613 (1931) (rejecting New York rule and holding that any attorney who renders services in an action, even if not attorney of record, may file lien under Minnesota statute providing that "an attorney has a lien for his compensation").

In deciding which of these conflicting approaches should guide us in construing G. L. c. 221, § 50, we must give due deference to the underlying intent of our Legislature as expressed by the plain language of the statute. See *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975); *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975). Additionally, we must attempt to construe § 50 in harmony with other related statutes and rules so as to give rise to a consistent body of law. See *Board of Educ.*, *supra* at 513-514. By its plain terms, § 50 extends the right to file a

---

[9]The statute provided that "the attorney . . . who shall appear in the cause for the party" may file a lien against the client's judgment. N.J. Stat. Ann. 2A:13-5 (1987).

lien to the attorney who "appears" for a client. In turn, rule
11 (b), 365 Mass. 753 (1974), provides that an attorney may
"appear" either by filing a notice of appearance or by signing
pleadings and motions on behalf of a client. Were we to fol-
low the New York rule and hold that an associated counsel
who signs motions and pleadings in a case may not file a lien,
see *Barnum* v. *Srogi, supra,* we would skew the clear defini-
tion of the term "appearance" provided by rule 11 (b).

Attorneys' liens are devices, first created by the common
law, which help attorneys deal with the oft-encountered re-
luctance of certain clients to pay for legal fees at the conclu-
sion of a matter. McCann, The Attorney's Lien in Massa-
chusetts, 69 Mass. L. Rev. 68, 68 (1984). As Chief Judge
Cardozo aptly put it, the attorney's lien protects attorneys
"against the knavery of their clients, by disabling the clients
from receiving the fruits of recoveries without paying for the
valuable services by which the recoveries were obtained."
*Matter of Heinsheimer,* 214 N.Y. 361, 364 (1915), quoted in
McCann, *supra* at 68 n.1. In other words, the attorney's lien
grants the unpaid attorney a tool for recovery of legal fees
which surpasses in effectiveness a traditional action in con-
tract or in quantum meruit.

While attorneys practicing in this Commonwealth derive
the right to file a lien from an act of the Legislature rather
than from the common law, *Elbaum, supra* at 663-664 n.1,
the underlying goal remains the protection of the unpaid at-
torney. See *Crabb* v. *Robert R. Anderson Co.,* 117 Ill. App.
2d 271, 275 (1969). The statutory grant of the right to file a
lien to the attorney "appearing for a client" reflects a legisla-
tive judgment that such an appearance indicates that the at-
torney is expending services and skills in furtherance of the
client's interest. Both the signing of motions or pleadings and
the filing of a notice of appearance indicate that an attorney
is participating in the litigation of a case. See Mass. R. Civ.
P. 11 (b).

Neither the plain language nor the underlying purpose of
the attorney's lien statute requires us, as Shulman argues, to
confine the use of this statute to an attorney of record. We

decline to do so. We hold that the word "appears" in G. L. c. 221, § 50, should be construed to encompass the signing of pleadings or motions as well as the filing of a notice of appearance. See Mass R. Civ. P. 11 (b).

In the present case, this holding means that DiLoreto "appeared" on behalf of Boswell within the meaning of G. L. c. 221, § 50. However, our analysis does not stop here. As we explained, the attorney's lien is a tool for collecting fees. It follows that a mere appearance without a right to recover fees from the client directly does not support a lien against the proceeds of the client's recovery. *Democratic Cent. Comm.* v. *Washington Metro. Area Transit Comm'n*, 941 F.2d 1217, 1219 (D.C. Cir. 1991). *Hahn* v. *Oregon Physicians' Serv.*, 786 F.2d 1353, 1355 (9th Cir. 1985). Thus, an attorney must establish a substantive contractual or quantum meruit basis to recover fees from the client as a prerequisite to filing a lien. See *Elbaum, supra* at 664. See also *Gil-Wal Corp.* v. *Painewebber, Inc.*, 734 F. Supp. 566, 567 (D. Mass. 1990) (enforcing attorney's lien under G. L. c. 221, § 50, to secure quantum meruit right of recovery).

An associate counsel has no underlying right to recover fees against a client unless the client authorized or ratified the employment of the associated lawyer. *Serlin* v. *Rotman*, 371 Mass. 449, 450 (1976). *Parke* v. *Morin*, 304 Mass. 35, 39 (1939). While the ratification of the associated attorney's work need not be express, the circumstances of the case must be such as to raise an inference that the client expected that the associated lawyer would look to the client for payment. *Hahn, supra* at 1355. See *Aldrich* v. *Brown*, 103 Mass. 527 (1870).

However, whether or not Boswell authorized DiLoreto's employment, DiLoreto has no right of recovery against her because his claim arises under a contingent fee agreement. See S.J.C. Rule 3:05 (providing the circumstances and terms of valid contingent fee agreements); S.J.C. Rule 3:07, DR 2-106 (C), (prohibiting contingent fee agreements except as authorized by rule 3:05). DiLoreto was not a signatory of the

contingent fee contract between Shulman and Boswell. Thus, DiLoreto could not sue Boswell on this contract.

Further, the oral agreement between DiLoreto and Shulman precludes DiLoreto from recovering in quantum meruit against Boswell. Recovery in quantum meruit presupposes that no valid contract covers the subject matter of a dispute. Where such a contract exists, the law need not create a quantum meruit right to receive compensation for services rendered. *Hahn, supra* at 1355, citing *Kashmir Corp.* v. *Patterson,* 43 Or. App. 45, 48, aff'd, 289 Or. 589 (1979). See *Kennedy* v. *B.A. Gardetto, Inc.,* 306 Mass. 212, 216 (1940), citing *Gardiner* v. *Higgins,* 234 Mass. 350, 354-355 (1920), *Brown* v. *Fales,* 139 Mass. 21, 28 (1885). In *Hahn,* for instance, an attorney associated with the lead counsel in an antitrust action sought to establish a lien against the proceeds of the clients' recovery. The associated counsel had no contract with the clients, but he sought to assert a lien for the reasonable value of his services under a quantum meruit theory of recovery. The court held that the existence of a contract for fees between the associated counsel and the lead counsel precluded the associated counsel from recovering in quantum meruit against the client. *Hahn, supra* at 1355. In the absence of a substantive right of recovery against the client, the court refused to establish a lien in favor of the associated attorney. *Id.*

Thus, the judge below erred when she established a lien in DiLoreto's favor without determining whether he has a substantive right to recover against Boswell.[10] While DiLoreto

---

[10]We note that, even if we were to assume such a right, the judge should have determined this issue in accordance with the general rules of civil procedure rather than on the sole basis of the affidavits submitted by the parties and the court records of the original action. This court has stated that a petition for an attorney's lien pursuant to § 50 is analogous to a bill to reach and apply under G. L. c. 214, § 3 (7) (1990 ed.), in that such a petition includes in one proceeding the determination of a debt and the grant of equitable relief. *Torphy* v. *Reder,* 357 Mass. 153, 154 (1970). *Elbaum* v. *Sullivan,* 344 Mass. 662, 664 (1962). With respect to practice and pleadings, the rules generally applicable to civil actions govern the procedure for bringing petitions for attorney's liens. McCann, The Attorney's Lien in Massachusetts, 69 Mass. L. Rev. 68, 83 (1984). See J.R.

may attempt in a separate action to enforce his oral agreement with Shulman, see *Doherty* v. *Ginsburg*, 346 Mass. 421 (1963), *Parke* v. *Morin*, 304 Mass. 35 (1939), DiLoreto may not establish a lien against the proceeds of Boswell's recovery without an independent substantive right.[11]

The decision of the Superior Court enforcing DiLoreto's attorney's lien is reversed. DiLoreto's lien is vacated forthwith.

*So ordered.*

---

Nolan, Equitable Remedies § 233, at 343 (1975); Mass. R. Civ. P. 2, 365 Mass. 733 (1974).

[11] Today's decision does not preclude DiLoreto from recovering in quantum meruit against Shulman in a separate action, if the facts and the law so warrant.