Lauriat, J.
Plaintiff, Neil R. Fontaine d/b/a Drywall Construction Company (“Fontaine”), brought this action against the defendants to recover damages for services Fontaine performed as a subcontractor under a general contract with William Keilar, Inc. (“Keilar”), on a building at 209-213 Burlington Road, Bedford, Massachusetts (“the Bedford property”). Defendants Kevin Curran, John Tyiko, Jr., and Douglas Macrae are partners in C.M.T. Really (collectively, “C.M.T.”). C.M.T. owns the Bedford property and executed the general contract with Keilar. C.M.T. has now moved for summary judgment on the grounds that Fontaine’s statutory notice of contract was not timely filed and is of no effect, and that a subcontractor may not assert a claim for unjust enrichment against an owner. Fontaine opposes C.M.T.’s motion and has cross-moved for summary judgment. Fontaine asserts that it has perfected a mechanic’s lien on the Bedford property pursuant to G.L.c. 254, §4 and, in the alternative, that Fontaine is properly entitled to restitution from C.M.T. For the reasons which follow, the defendants’ motion for summary judgment is denied in part and allowed in part. The plaintiffs motion for summary judgment is denied.
BACKGROUND
On or about August 3, 1992, C.M.T. entered into a general contract with Keilar for work to be performed on the Bedford property. Previously, on July 15, 1992, Keilar had entered into a subcontract with Fontaine for drywall framing and insulation work. The amount of the subcontract was $72,777 and the subcontract did not expressly state a completion date. (Exhibit A to Plaintiffs Opposition.)[2] The completion date listed on the purported general contract was November 1, 1992.[3] C.M.T. contends that Fontaine’s work was completed by December 25, 1992 and relies on Fontaine’s alleged fifth “Application and Certificate of Payment.”[4] Fontaine asserts, however, that it did not complete its work on the Bedford property until August 16, 1993. (Affidavit of Neil R. Fontaine, ¶¶14-16.) Fontaine contends that it recorded a notice of contract on August 11,1993, and a statement of claim on September 16, 1993, pursuant to G.L.c. 254, §4, with the Middlesex South Registry of Deeds and the Land Registration Office.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991), accord, Kourouvacüis v. GeneralMotors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summaryjudgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I.
Fontaine asserts that it has perfected a mechanic’s lien by filing a notice of contract pursuant to G.L.c. 254, §4. G.L.c. 254, §4 states in relevant part,
Upon filing a notice, . . . and giving actual notice to the owner of such filing, the sub-contractor shall have a lien to secure the payment of all labor and material . . . But such, lien shall in no event exceed the amount due or to become due under the original contract when notice of the filing of the sub-contract is given by the sub-contractor to the owner; and the time for the performance of the contract of the sub-contractor shall not be extended beyond the time for the performance of the original contract and any extension thereof, if the objection thereto of the owner is filed in the registry of deeds and actual notice of such objection is given by the owner to the sub-contractor within five days after the owner received notice of the filing of the contract as provided in this section. (Emphasis added.)
“The lien is a creature of the statute, and can be enforced only by strict compliance with the statute.” Hammill-McCormick Associates, Inc. v. New England Telephone & Telegraph, Co., 399 Mass. 541, 544 (1987).
C.M.T. asserts many of the same arguments against Fontaine as it asserted against Wayside Glass & Mirror *26 Co., Inc., a companion case, in its memorandum in support of its motion for summary judgment. First, C.M.T. asserts that there was no written contract between Fontaine and Kellar, and thus G.L.c. 254, §4 is inapplicable. Fontaine, however, has submitted a signed “Subcontractors Agreement” as Exhibit A to the Affidavit of Neil R. Fontaine. C.M.T.’s ignorance of the existence of this document while drafting its memorandum is yet a further indication of the obvious lack of communication between the parties.
C.M.T. further contends that Fontaine’s work was completed by December 25, 1992 and that any work performed after that date was de minimus and “with the direct intention to providing Drywall with an opportunity to file a Notice of Contract.” (Defendant’s Memorandum in Support, p. II.)[5] Fontaine avers that, until August of 1993, he performed punchwork in addition to completing the balance of his other work under the subcontract. (Affidavit of Neil R. Fontaine, ¶¶15 and 16.) As with the Wayside case, the court is without a sufficient record to determine the actual termination date of the work under the Fontaine-Kellar subcontract.
C.M.T. further contends that on August 11, 1993, the date on which the notice of contract was filed, there was “no amount due or to become due under the original contract,” and therefore, G.L.c. 254, §4 is inapplicable. C.M.T. asserts that the original contract between Kellar and C.M.T. was a “guaranteed maximum price” contract, which could not exceed $668,300. The contract states that “the Contractor is to receive a thirty percent portion of any amount of monies from the GMP.”[6] (Exhibit A to Defendant’s Motion for Summary Judgment.) C.M.T. therefore alleges that its payment of $606,790 to Kellar satisfies its obligation under the general contract. Fontaine disputes this assertion but offers no documentary evidence to refute C.M.T.’s claim. The court is again without a sufficient record to determine the status of the general contract. Consequently, the court must conclude that there is a genuine issue of material fact as to whether Fontaine perfected a mechanic’s lien pursuant to G.L.c. 254, §4, and summary judgment on that claim is not proper.
II.
Fontaine alleges breach of contract in Count I of its complaint. However, Fontaine does not argue this Count in its memorandum and, by focusing on its remedy of restitution, appears to suggest that the contract claim is not viable. “Recovery in quantum meruit presupposes that no valid contract covers the subject matter of a dispute. Where such a contract exists, the law need not create a quantum meruit right to receive compensation for services rendered.” Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 250 (1993). Because Fontaine has presented no evidence of either an express or implied contract between Fontaine and C.M.T., the court must grant summary judgment to C.M.T. on Count I of the complaint.
Fontaine also seeks to recover from C.M.T. in quantum meruit for its services. The services for which Fontaine seeks recovery are the exact subject of an express subcontract between Fontaine and Kellar. Fontaine’s difficulty in collecting payment from Kellar does not require the court to grant Fontaine quantum meruit relief against a third-party beneficiary of the subcontract. Furthermore, to state a claim for quantum meruit, Fontaine would have to demonstrate not only that it conferred a measurable benefit on C.M.T., but also that Fontaine provided the services with the reasonable expectation of receiving compensation from C.M.T. Bolen v. Paragon Plastics, Inc., 747 F.Supp. 103, 107 (D.Mass 1990); Salomon v. Terra, 394 Mass. 857, 859 (1985). In fact, Fontaine performed the drywall framing and insulation work with the expectation that the general contractor, not the owner, would pay for its work. Thus, C.M.T. is entitled to summary judgment on Count I (Breach of Contract) and Count III (Quantum Meruit) of Fontaine’s complaint.
ORDER
For the foregoing reasons, the defendants’ Motion for Summary Judgment on Count I (Breach of Contract) and Count III (Quantum Meruit) is ALLOWED. The defendants’ Motion for Summary Judgment on all other counts is DENIED. The plaintiffs Cross Motion for Summary Judgment is DENIED.

Fontaine contends that the final subcontract price was $78,496 as amended by a change order. The court, however, has found nothing in Fontaine’s submissions which resembles a change order. C.M.T. refers the court to Exhibits F-2 and F-3 of Kevin Curran’s Affidavit for two documents entitled “change order.” There are no Exhibits F-2 and F-3 to Kevin Curran’s Affidavit, but fortuitously, the court has found two documents entitled change order at Exhibits G-2 and G-3.

As Fontaine noted at oral argument, the purported general contract is not signed by either Kellar or a representative of C.M.T.

The “Application and Certificate of payments has not been submitted by C.M.T. with its motion, and therefore, C.M.T.’s quotation of this document constitutes inadmissible hearsay which the court may not consider. Proposed Mass. R. Evid. 802 and Fed. R. Evid. 802.

Again, C.M.T. cites from interrogatories which it has not submitted to the court. Mass.R.Civ.P. 56(e) allows the court to consider only supporting affidavits made on personal knowledge which set forth facts which would be admissible in evidence.

The General Contract contains a variety of confusing handwritten and typed notations.