In re LEADING EDGE PRODUCTS, INC., Leading Edge Hardware Products, Inc., Leading Edge World Trade Asia, Inc., Leading Edge World Trade, Inc., Light Video Television, Inc., Leading Edge Video Products, Inc., Amazing Things, Inc., and Leading Edge Software Products, Inc., Debtors.

Bankrtupcy Nos. 89–10373–JNG, 89–10341–JNG and 89–10952–JNG to 89–10957–JNG.

United States Bankruptcy Court, D. Massachusetts.

Nov. 9, 1990.

See also 120 B.R. 616.

Peter J. Antoszyk, Kaye, Fialkow, Richmond & Rosthstein, Boston, Mass., for trustee.

Charles W. Morse, Jr., Friedman & Atherton, Boston, Mass., for creditor.

## MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

### INTRODUCTION

The matter before the Court is the Trustee's objection to the proof of claim filed by the law firm of Friedman & Atherton on or around June 9, 1989. The Trustee has stipulated that Friedman & Atherton holds a claim in the amount of $158,629.20, but has denied that the firm holds a lien or security interest in the Debtors' property for the repayment of the claim. Resolution of this dispute involves statutory construction of G.L. c. 221, § 50, Mass.Gen.Laws Ann. ch. 221, § 50, (West 1958 & Supp. 1990).

### FACTS

Friedman & Atherton was retained by Leading Edge Products, Inc. ("Leading Edge") in June of 1984. The firm commenced a civil action against Mitsubishi Electronics of America, Inc. in the Massachusetts Superior Court. The action was later removed to the United States District Court for the District of Massachusetts. In the action, Leading Edge asserted claims for damages against Mitsubishi in excess of $50 million for personal computers and color monitors sold and delivered prior to the Chapter 11 filing.[1]

---

1. A more detailed summary of the federal district court litigation is contained in the First Amended Disclosure Statement, which was approved by the Court on August 10, 1989, and in the Motion of Trustee for Authority to Enter into Loan and Release Agreement with Mitsubi-

The Debtor, according to Friedman & Atherton, acknowledged receipt of the goods, but disputed the price per unit. Leading Edge contended that only $12 million would be owed to Mitsubishi if certain contested price adjustment clauses were resolved in the Debtor's favor.

At the time of the commencement of the Leading Edge cases, the Leading Edge–Mitsubishi litigation was pending. The litigation was settled in the context of the confirmed plan of reorganization that was proposed by the Chapter 11 Trustee and Daewoo Telecom, Inc. on behalf of all the Leading Edge companies by the exchange of mutual releases between the parties. There was no cash exchanged in the context of the settlement, and the litigation was voluntarily dismissed without judgment entering in favor of either party. The Trustee, in the disclosure statement accompanying the proposed plan of reorganization, described the resolution of the litigation as a "washing" of the claims.[2] Following the approval of the disclosure statement, on August 14, 1989, the Trustee filed a "Motion for Authority to Enter into Loan and Release Agreement" with Mitsubishi. There being no objection, the Court allowed the motion on August 23, 1990. In a written order dated August 24, 1989, the Court "ORDERED and DECREED that effective on the entry of this Order, the Trustee and each of the above-referenced Chapter 11 Debtors release from all claims and liabilities, of every kind, nature and description, however and wherever arising, MELA [Mitsubishi] and all its affiliates...." Subsequently, the Court on September 14, 1990, entered an order confirming the plan of reorganization.

The plan of reorganization contains the following provisions relative to the settlement of the Leading Edge–Mitsubishi litigation:

4.2 *Exchange of Releases on the Effective Date With Mitsubishi.* Prior to the Effective Date, the Debtors and Mit-

subishi shall deliver to the Escrow Agent executed releases in which Mitsubishi releases the Debtors and the Trustee from all claims and liabilities (including those asserted in the proofs of claim Mitsubishi has caused to be filed against the Debtors) and in which the Trustee and the Debtors release from all claims and liabilities Mitsubishi, its officers, directors, agents and attorneys and its affiliates (including but not limited to Mitsubishi Electric Corporation). The Escrow Agent, on the Effective Date, shall distribute these releases to the Debtors and Mitsubishi, as appropriate.

4.3 *Exchange of Dismissals of the District Court Action on the Effective Date.* Prior to the Effective Date, the Debtors and Mitsubishi shall deliver to the Escrow Agent executed pleadings dismissing with prejudice and without costs the District Court Action as to all parties thereto. The Escrow Agent, on the Effective date, shall distribute such pleadings to Mitsubishi, which shall promptly cause them to be filed in the United States District Court for the District of Massachusetts.

In addition to representing Leading Edge prior to the commencement of the bankruptcy proceedings, Friedman & Atherton, with this Court's approval, was retained by the Trustee for the purpose of assisting him in his evaluation of the pending litigation. The order allowing the firm's employment as special counsel was entered on June 15, 1989.

## DISCUSSION

■ The Trustee has objected to the alleged secured status of Friedman & Atherton's proof of claim on the grounds that the statutory conditions of the attorneys' lien statute have not been met. The statute provides in relevant part:

From the authorized commencement of an action, counterclaim or other proceed-

---

shi Electronics America, Inc., which motion was allowed on August 23, 1989.

**2.** The First Amended Disclosure Statement describes the "washing" as "having all of the

claims by Mitsubishi against Leading Edge and all of the claims of Leading Edge against Mitsubishi dismissed without the payment of any amount by either party."

ing in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or *other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom.*

Mass.Gen.Laws Ann. ch. 221, § 50 (West 1958 & Supp.1990). The Trustee, citing *Torphy v. Reder*, 357 Mass. 153, 257 N.E.2d 435 (1970), and *Collins v. Town of Webster*, 25 Mass.App.Ct. 745; 522 N.E.2d 12 (1988), argues that the above language grants attorneys' liens only if the litigation is favorably concluded by the entry of judgment.

In *Torphy*, the Supreme Judicial Court held that where the defendant's stock certificates and bank books were placed in escrow in connection with disputed ownership in a divorce proceeding, and such property could not be removed without the signatures of the attorneys for both sides, the defendant's attorney was not entitled to a possessory lien on such property for services rendered to the defendant in the divorce proceeding. The court stated:

> Reder [the defendant] argues, and we think rightly, that since there was no decree in his favor there was nothing to which the statutory lien could attach. As noted in *Elbaum v. Sullivan*, 344 Mass. 662, 663–664 [183 N.E.2d 712 (1962)], the type of lien created by G.L. c. 221, § 50, is a charging lien which binds the judgment or money decree for payment of expenses incurred and for services rendered by an attorney with respect to the particular action or suit. No judgment or decree exists in Reder's favor in the current litigation.

357 Mass. at 156, 257 N.E.2d 435. *See also Collins,* 25 Mass.App.Ct. at 749, 522 N.E.2d 12 ("the attorney lien may be enforced only to the extent of the judgment in favor of the client").

Friedman & Atherton argues that the statute clearly and unambiguously does not limit the attorney's lien to the situation in which a "judgment, decree or other order in the clients favor" has been entered. It maintains that the phrase "proceeds derived therefrom" applies to both "client's cause of action" and "judgment ... in ... client's favor." Accordingly, it argues that there are "proceeds derived" from the client's cause of action, namely a benefit worth at least $5.4 million derived from the reduction in the amount of claims in the unsecured creditor class resulting from the elimination of Mitsubishi's claim of $12 million.[3]

Friedman & Atherton asserts that their lien came into existence on December 7, 1984 and attached to the Debtor's cause of action against Mitsubishi and the proceeds of that action, namely the $5.4 million benefit to the Debtors' estate from the settlements embodied in the plan promulgated by the Trustee. The law firm relies on the case of *In re Hoy's Claim*, 93 F.Supp. 265 (D.Mass.1950). In that case, Hoy, an attorney, filed a complaint on behalf of Thurston, a citizen of Maine, against Hutchinson, a citizen of Massachusetts. On the same day Hoy filed the complaint, Thurston, in consideration of $10,400, released Hutchinson from all actions arising from the injury. In response, Hoy filed a motion to arrest the judgment. The court addressed three issues: 1) whether prior to the release Hoy had a lien on his client's cause of action; 2) whether the federal court could determine and enforce the lien; and 3) whether, if Hoy had a lien he lost it because his client released his own cause of action against Hutchinson. The court answered the first two questions affirmatively. With respect to the third issue, the court stated:

> The answer is that while the release may have discharged Hutchinson's liability to Thurston, it left Hutchinson liable to Hoy if Hoy filed the complaint before the release was executed and if Hutchinson

---

**3.** Friedman & Atherton calculate the benefit by multiplying Mitsubishi's $12 million dollar claim by 45%, the amount of the dividend non-

dealer unsecured creditors are entitled to receive in deferred payments under the Debtors plan of reorganization.

knew that fact.... Hoy remains free to press in this Court or elsewhere against Hutchinson up to the extent of his lien his claim for services rendered to Thurston. Hoy also remains free to press here or elsewhere against Thurston his service rendered him less any amount collected from Hutchinson.

93 F.Supp. at 266–67. The court in *In re Hoy's Claim* did not hold that the attorney's lien attached to the settlement amount. Indeed, the court only ruled that Hutchinson was not entitled to judgment dismissing the action with prejudice. Nevertheless, Friedman & Atherton maintain that the situation in the instant case, i.e., "where the client and the defendant have settled with each other but without obtaining the written assent of the attorney of record," is precisely the situation addressed by the court in *In re Hoy's Claim*.

This argument is meritless. Joel Kozol and the law firm of Friedman & Atherton were appointed special counsel to the Trustee on June 15, 1989 for the purpose of assisting the Trustee in evaluating the Mitsubishi litigation. As both a creditor and a court appointed functionary in the case, the Court finds that Friedman & Atherton was in a position to object to the disclosure statement, the Motion for Authority to Enter into Loan and Release Agreement and confirmation in order to protect their lien on Leading Edge's cause of action. The innuendo that the Leading Edge–Mitsubishi settlement was akin to the subterfuge evident in *In re Hoy's Claim* is simply unjustified. Moreover, if the Court were to accept Friedman & Atherton's analysis, then in accordance with *In re Hoy's Claim*, the firm should go after Mitsubishi for its fees first.

■ The Court's review of G.L. c. 221, § 50 and the cases cited by counsel compel but one conclusion: the attorneys' lien statute must be construed in the manner advocated by the Trustee. Clearly, when an attorney files an action an inchoate lien *arises* in his or her favor. The lien becomes choate *when* a judgment, decree or other order is entered in the client's favor ("upon the judgment, decree etc."). Finally, the lien attaches *to* "the proceeds derived therefrom." Friedman & Atherton would have the Court eliminate the reference to judgment, decree or order in the statute. Although from a grammatical point of view it is not inconceivable that the phrase, "the proceeds derived therefrom" has dual antecedents, the Court finds that in fact that phrase modifies the prior phrase, "upon the judgment, decree or other order ..." only.

However, even if the Court were to adopt Friedman & Atherton's position relative to "dual antecedents," the Court is not convinced that the benefit derived from the elimination of Mitsubishi's unsecured claim in exchange for the relinquishment of the Debtors' substantial claims against Mitsubishi constitutes "proceeds" derived from the cause of action, particularly where Leading Edge's claims against Mitsubishi were released and the district court litigation dismissed with prejudice. In this regard, the so-called benefit to the Debtors, although capable of being valued, did not result in the receipt of cash or cash equivalents by the Debtors. It seems likely to the Court that the drafters of section 50 contemplated the existence of a fund, either made up of cash or capable of being reduced to cash, generated from a judgment, decree or other order, including an order approving a settlement. The benefit derived from the elimination of Mitsubishi's claim did not bring anything into the estate per se—it merely reduced the amount of money that had to be paid out of the Debtors' estate. The Court finds that this is not equivalent to "proceeds."

Additionally, the Court questions whether, in fact, Friedman & Atherton's client received a benefit. There simply was no order or decree entered in Leading Edge's favor. Pursuant to the Debtors' plan, Leading Edge ceased operations and its business was acquired by Daewoo Telecom, Inc. Thus, the benefit did not inure to the Debtor—it inured to the unsecured creditors of the Debtors' estate and the proponents of the plan.

In conclusion, the court rules that Friedman & Atherton does not have a secured claim. Their lien arose at the commencement of Leading Edge's case against Mitsubishi, but it never became choate or attached to proceeds from a cause of action, claim or judgment. Leading Edge, with the authority of this Court and after appropriate notice, released *any and all claims* against Mitsubishi, and dismissed with prejudice the federal court action. This Court will not torture the plain meaning of G.L. c. 221, § 50 and the case law to rule that the value ascribed to the release of Mitsubishi's claim constitutes proceeds from a cause action. Friedman & Atherton, as special counsel to the Trustee, were well apprised of the Trustee's intention to wash the claims of the Debtor and Mitsubishi. The law firm's remedy was to object to the Motion for Authority to Enter into Loan and Release Agreement or confirmation. Having failed to do so, the firm is not in a position to argue that *In re Hoy's Claim, supra,* is applicable, entitling the firm to a secured claim based on their tenuous interpretation of section 50.

The Court is mindful that obtaining an attorney's lien is an equitable matter. *See Torphy v. Reder,* 35 Mass. at 153–54, 257 N.E.2d 435. Although the firm like so many creditors in this case will suffer a serious loss (approximately $87,000), in mitigation the Court notes it was appointed and compensated for its role as special counsel to the Trustee.

### ORDER

In accordance with the memorandum dated November 9, 1990, the Court hereby allows the proof of claim of Friedman & Atherton in the amount of $158,629.20 as an allowed unsecured claim.