# DECISIONS

### OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

---

ELI COHEN, trustee, *vs.* JOSEPH LINDSEY & others.[1]

No. 93-P-1028.

Middlesex. May 9, 1994. - January 5, 1995.

Present: KASS, FINE, & GREENBERG, JJ.

*Attorney at Law*, Compensation, Lien.

Where an attorney obtained a preliminary injunction that required a tenant of a corporation controlled by the attorney's client to pay money into an escrow account pending a final determination of an eviction proceeding, those funds were appropriately subject to an attorney's lien inasmuch as the injunction was an "order in [the] client's favor" within the meaning of the lien statute, G. L. c. 221, § 50. [4-5]
A proceeding on an attorney's lien was remanded to the Superior Court for an assessment of reasonable counsel fees. [6]

---

[1]Neither Lindsey nor the other parties to the original case are parties on the appeal; the appeal solely concerns a lien of the plaintiff's attorney. The Federal Deposit Insurance Corporation is an intervener.

CIVIL ACTION commenced in the Superior Court Department on November 19, 1991.

A motion of the intervener for summary judgment was heard by *Charles T. Spurlock, J.*

A proceeding for interlocutory review was heard in the Appeals Court by *Dreben, J.*

*Andrew M. Fisher,* pro se

*Lawrence R. Holland* for the intervener.

GREENBERG, J. In November, 1991, Andrew Fischer, attorney for the plaintiff Eli Cohen, obtained a preliminary injunction which required a tenant of a corporation controlled by Cohen to pay money into an escrow account pending a final determination of an eviction proceeding. At issue is whether those funds were subject to an attorney's lien under G. L. c. 221, § 50.[2] We hold that they were and that Mr. Fischer has perfected a valid lien under the statute. Accordingly, we vacate the judgment which later entered in the case, and remand the matter to the Superior Court for an assessment of reasonable counsel fees to be paid from the money remaining in the escrow fund.[3]

As background to the controversy, we describe the underlying litigation and the events which preceded it. In 1982, Eli Cohen, the operator of a small pita bread bakery, purchased a building in Malden to expand his operation. As a vehicle to hold title, Cohen set up L&E Realty Trust, of which he was trustee and principal beneficiary. Cohen borrowed the purchase money and signed a mortgage note in the amount of $1,500,000 to Bank Five for Savings (Bank Five), and executed a conditional assignment of rents in the bank's favor.

The bakery conducted business as New England Food Co., Inc., until 1990, the corporation leasing the premises from

---

[2]General Laws c. 221, § 50, as appearing in St. 1945, c. 397, § 1, states in pertinent part, that an "attorney who appears for a client . . . [in a] proceeding in any court . . . shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom."

[3]A single justice of this court stayed the release of $45,000 of the fund pending appeal.

the trust. As part of a financial restructuring, that corporation was merged into a new entity called N.E. Food Co., Inc. To infuse capital into the flagging enterprise, Cohen enlisted LRF Investments and LRF Capital Limited Partnership (LRF) to become shareholders as well as secured creditors of the new corporation.[4]

Less than a year later — in July of 1991 — LRF declared N.E. Food Co., Inc., in default of its loan obligations. This prompted LRF to repossess all of N.E. Food Co.'s equipment and fixtures; all were sold to Milldam Bakeries, a competitor. Cohen then enjoyed a brief stint as an employee of Milldam, allowing operations to continue under the lease. After several disagreements, Milldam fired Cohen. His termination triggered the eviction action together with a claim for back rent.

In November, 1991, a judge of the Superior Court entered an interlocutory order permitting Milldam to remain on the premises on condition that $10,000 per month as rent be paid into court until the case was concluded. Milldam paid a total of $60,000 into court under this order. As further security for Cohen, Milldam was required to place $100,000 in escrow for the removal of certain equipment from the building; Milldam later paid another $250,000 as a bond to dissolve Cohen's attachment on remaining bakery equipment.[5] In total, $410,000 was paid into the escrow account.

On March 4, 1992, Mr. Fischer filed a notice of lien for attorney's fees for $30,000. On April 28, 1992, the Federal Deposit Insurance Corporation (FDIC), as receiver of the now defunct Bank Five, moved to intervene as a party to the action, seeking to establish its priority claim to the escrow fund.[6] Several weeks later, Mr. Fischer filed a notice

---

[4]LRF held a security interest in the personal property and fixtures of N.E. Food Co., Inc.

[5]The payments are listed in the docket but not included in the record for appeal.

[6]The FDIC had obtained a default judgment against Cohen on the mortgage on October 30, 1991.

increasing the amount of his lien to forty-five thousand dollars.[7]

On December 23, 1992, a Superior Court judge ordered that $228,087.95 be paid to the FDIC, on account of the fair rental value of the building and the value of the equipment removed by Milldam. The remainder was released to Milldam. On a petition of Mr. Fischer to this court seeking relief under G. L. c. 231, § 118, first par., a single justice stayed the release of $45,000 of the $228,087.95 allotted to the FDIC, pending a full appeal.

1. *Validity of the Attorney's Lien.*

The FDIC, citing several older cases, contends that the statutory attorney's lien only exists after the entry of a final judgment in the client's favor. Such, indeed, was the case under G. L. c. 221, § 50, as in effect prior to St. 1945, c. 397, § 1, which provided that a statutory attorney's lien existed only after the entry of final judgment in the client's favor. See *Check* v. *Kaplan,* 280 Mass. 170 (1932); *Tauro* v. *General Acc. Fire and Life Assur. Corp.,* 297 Mass. 234 (1937). By the time Mr. Fischer filed his lien, the modern version of § 50 as appearing in the 1945 statute *supra,* permitted a lien on "the judgment, decree or *other order in his client's favor*" (emphasis added). Note 2, *supra.*

The sweep of the statute now includes any type of court order obtained in a client's favor. "The text [of a statute] must be afforded its plain meaning when it is clear and unambiguous." *Telesetsky* v. *Wight,* 395 Mass. 868, 872 (1985). In the instant case, the judge ordered Milldam to pay $10,000 per month into the fund for the use and occupancy of the bakery facility, subject to a final determination of each party's rights and liabilities. The order established the fund as potential security for Cohen, pending an entry of final judgment in the case. The effect of the order was the same as an equitable attachment to reach and apply credits

---

[7]Although Fischer asserted in his brief that he filed his notice of increase of lien on April 30, 1992, the notice is in fact stamped as filed on May 12, 1992, well after the FDIC had intervened. Our holding in this case, however, renders the date of his second filing irrelevant.

of Milldam to satisfy Cohen's claim. See G. L. c. 246, §§ 1, 13; Gilleran, Massachusetts Prejudgment Security Devices: Attachment, Trustee Process, and Reach and Apply, 69 Mass. L. Rev. 156, 169 (1984). That the order actually required a transfer of funds in favor of Mr. Fischer's client differentiates the order from a simple attachment, which might not be the occasion of giving ground for an attorney's lien. The fact that the judge eventually awarded the fund to Cohen's creditor to reduce the amount of his liability to the bank, does not alter the character of the initial order.

At common law, the underlying theory was that a lawyer's labor in the client's cause ought to be protected by the imposition of a lien. See McCann, Attorney's Liens in Massachusetts, 69 Mass. L. Rev. 68, 73-74 (1984). When, as occurred in this case, Mr. Fischer's efforts resulted in a fund available to satisfy Cohen's liability to the bank, we may conclude from the language of the first sentence of G. L. c. 221, § 50, that the use of the fund for the payment of legal fees was appropriate.[8]

For its part, the FDIC claims to rank first in the contest for the fund. However, the lien statute gives an attorney a right to assert a "charging lien" to secure compensation for legal services rendered. See *Boswell v. Zephyr Lines, Inc.*, 414 Mass. 241, 244 (1993). The lien takes effect from the authorized commencement of an action or any proceeding in any court. G. L. c. 221, § 50. See Black, Attorneys' Liens in Massachusetts, 43 Mass. L. Q. (No. 3) 33, 36 (1958). Mr. Fischer preempted the FDIC by filing first in the Superior Court the appropriate notice of lien. See McCann, Attorney's Liens in Massachusetts, 69 Mass. L. Rev. at 83. The filing serves as notice of the lien to other parties. Black, *supra* at 38. See Martin and Hennessey, Automobile Law and Practice § 1883 (2d ed. 1967).

---

[8]The FDIC also argues that the fund did not constitute "proceeds" subject to a lien under G. L. c. 221, § 50. The FDIC relies on *In Re Leading Edge Products, Inc.*, 121 B.R. 128 (Bankr. D. Mass. 1990), and *Torphy v. Reder*, 357 Mass. 153 (1970). Both are inapposite because they involved vastly different factual circumstances.

## 2. *The Amount of the Lien.*

We are handicapped — and so far as we know, so was the motion judge — by not having been furnished with a particularized account or statement establishing Mr. Fischer's claim for reasonable attorney's fees. When Mr. Fischer filed his first lien, he perfected a lien for reasonable fees. The assertion of a specific amount for the lien is not necessary, and in many cases is impossible.[9] That Mr. Fischer claimed a lien for $30,000 is immaterial. Filing an attorney's lien for a specific amount does not entitle an attorney to fees in that amount, nor does it limit the court in its determination of reasonable fees for the services rendered.[10] Thus, there remains the question of the appropriate legal fee to be deducted from funds paid into court by Milldam. The judge in this case, on remand, should determine on the supporting materials, the reasonable counsel fees of Mr. Fischer, considering all the appropriate criteria. See *Mulhern* v. *Roach*, 398 Mass. 18, 24 (1986), and cases cited.

The judgment is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion. We leave to the discretion of the judge whether to hold further hearings and take evidence.

*So ordered.*

---

[9]For example, in contingent fee cases, or cases where the lien is filed while litigation is still ongoing.

[10]The FDIC asserts that Fischer is not entitled to collect attorney's fees because he submitted no evidence to the trial court to substantiate his claim. Such evidentiary support is not strictly necessary; the determination as to what are reasonable attorney's fees may be made on the judge's own observations of the relevant factors during trial. *McLoughlin* v. *Disarro*, 7 Mass. App. Ct. 853, 854 (1979). See *Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 631 (1978).