Kottmyer, J.
This matter is before the Court on a petition by plaintiffs counsel for an attorney’s lien pursuant to G.L.c. 221, §50 on the settlement proceeds of this action. For the following reasons, the petition is allowed.
BACKGROUND
Petitioner, Hinckley, Allen & Snyder (“HAS”), filed this action on behalf of plaintiffs M. Mahmud Awan (“Awan") and Philip A. Phalon (“Phalon”)[3] against defendant Technical Communications Corporation (“TCC”). The litigation was attendant to a proxy contest for control of TCC. Awan and his wholly-owned corporation, Techman International, Inc. (“Techman”), own TCC stock. HAS claims that Awan owes it $423,664.57 in legal fees for services rendered in connection with the litigation.
On November 19, 1998, Awan, after negotiating directly with TCC, entered into a Settlement Agreement (“the Settlement Agreement”). Petitioner was not involved in negotiating the Settlement Agreement. As part of the Settlement Agreement, Awan was elected chairman of TCC’s board of directors, and TCC agreed to reimburse Awan up to $395,000 for documented “expenses of the Litigation [and other related expenses] . . . including, but not limited to, the fees and expenses of Hinckley, Allen & Snyder, Merrill Corporation, and McKenzie & Co., Inc.” The Settlement Agreement entitled TCC to verify the amount of legal fees by reviewing bills, including attorneys’ detailed time records, and by directly questioning HAS about the expenses. The Settlement Agreement required TCC to pay Awan an initial disbursement of $300,000 within three business days of the date of the agreement.[4] Pursuant to 113, the effective date of the Settlement Agreement was the later of (a) final approval of the TCC Board of Directors and (b) the dismissal of the litigation with prejudice.
On November 19, 1998, the Board of Directors approved the Settlement Agreement and the Court issued an order of Nisi Dismissal on the action. On November 23, 1998, HAS filed a Notice of Attorney’s Lien,[5] a copy of which it had provided to TCC’s counsel on November 20, 1998, via facsimile. According to the docket, on November 23, 1998, the parties also filed and the Court approved a Stipulation of Dismissal with prejudice,[6] which stated that the Stipulation of Dismissal was “[p]ursuant to a Settlement Agreement dated November 19, 1998 among the parties.” Also on November 23, 1998, TCC wire transferred $300,000 to Techman.[7] In the week following November 23, 1998, counsel for TCC repeatedly told HAS that TCC had not made any payments pursuant to the Settlement Agreement.[8]
*658 Stock in TCC standing in Awan’s name individually and in the name of Techman is held by Prudential Securities (“Prudential”) of Springfield, Massachusetts. The stock is in margin accounts which contain other securities.
According to his own accounting dated January 8, 1999, Awan used the $300,000 as follows: $157,402.36 was paid to Prudential to meet margin calls in accounts held by Awan individually and through Techman: $111,744.15 was paid to reimburse Techman for its prior payments to Prudential to meet margin calls; $18,000 was paid to co-plaintiff Phalon for legal expenses he paid; $10,000 Awan retained for legal expenses he had already paid, and the balance of $2,853.49 is held by Techman.
It is uncontroverted that if Awan had not used the money to cover margin calls, Awan’s margin account would have been at least partly liquidated, which would have depressed the value of TCC shares. These settlement proceeds, therefore, supported TCC’s stock price.[9]
On December 4, 1998, HAS filed a Petition to Enforce An Attorney’s Lien. On December 16, 1998, TCC’s counsel informed HAS of the $300,000 transfer and its use to cover margin calls. On December 17, 1998, after a hearing on HAS’s Petition to Enforce Attorney’s Lien, this Court issued an order from the bench enjoining Awan from taking any action that would encumber, transfer, alienate or otherwise affect title to shares of common stock of TCC held directly or indirectly by Awan.
DISCUSSION
The Attorney’s Lien Statute, G.L.c. 221, §50 reads in pertinent part:
From the authorized commencement of an action . . . , the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client’s cause of action . . . upon the judgment, decree or other order in his client’s favor entered or made in such proceeding, and upon the proceeds derived therefrom. Upon request of . . . the attorney, the court in which the proceeding is pending or, if the proceeding is not pending in a court, the superior court, may determine and enforce the lien . . .
The Attorney’s Lien Statute gives an attorney the right to assert a “charging lien” to secure compensation for legal services rendered. Cohen v. Lindsey, 38 Mass.App.Ct. 1, 5 (1995), citing Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 244 (1993). Obtaining an attorney’s lien is an equitable matter. See Torphy v. Reder, 357 Mass. 153, 153-54 (1970). The lien gives the unpaid attorney a tool to recover legal fees which is more effective than a traditional action in contract or quantum meruit. Boswell v. Zephyr Lines, Inc., 414 Mass. at 248. The attorney’s lien protects attorneys “against the knavery of their clients, by disabling the clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained.” Id.
Filing a lien for a specific amount does not entitle an attorney to fees in that amount nor does it limit the court in its determination of reasonable fees for services rendered. Cohen v. Lindsey, 38 Mass.App.Ct. at 5. An attorney must establish a substantive contractual or quantum meruit basis to recover fees from the client as a prerequisite to filing a lien. Boswell v. Zephyr Lines, Inc., 414 Mass. at 249-51 (court must determine whether petitioner has substantive right to recover against client before establishing a lien in petitioner’s favor).
The inchoate attorney’s lien takes effect from the authorized commencement of the action and matures upon judgment favorable to the plaintiff. PGR Management Co., Inc. Health Properties v. Credle, 427 Mass. 636, 640 (1998). “[W]hen an attorney files an action an inchoate lien arises in his or her favor. The lien becomes choate when a judgment, decree or other order is entered in the client’s favor . . . [T]he lien • attaches to ‘the proceeds derived therefrom.’ ” In re: Leading Edge Products, Inc., 121 B.R. 128, 131 (D.Mass. 1990).
Awan and/or TCC contend that no lien exists because (1) HAS and Awan had no written agreement for legal fees; (2) attorney’s liens cannot attach to settlement proceeds; and (3) TCC disbursed the $300,000 before the lien arose, so there was nothing to which a lien could attach. Awan and TCC alternatively argue that, even if a lien exists, the petition should be denied on the grounds that the Court lacks jurisdiction over this matter and that the relief sought by HAS is unnecessary to protect HAS’s interests and would irreparably harm TCC stockholders.
I. The Existence of a Lien.
A. HAS’s Right to Recover Legal Fees
Awan and TCC first assert that HAS has no substantive right to recover against Awan and that no lien exists because HAS and Awan did not execute a written agreement for legal fees. No such written agreement is necessary to prove the debt because Awan does not deny that he owes HAS legal fees, but rather the amount owed.[10] The debt is also acknowledged in the Settlement Agreement which Awan and Phalon signed which provides for reimbursement of HAS’s legal fees arising out of the litigation. Accordingly, the Court finds that HAS has a substantive right to recover from Awan for expenses incunred and legal services rendered in connection with the litigation in an amount to be determined.[11]
B. Whether Attorney’s Liens Reach Settlement Proceeds
TCC[12] denies the existence of an attorney’s lien where, as here, the parties settled. A lien matures upon a judgment, decree or any type of court order *659 obtained in a client’s favor. See G.L.c. 221, s. 50; Cohen v. Lindsey, 38 Mass.App.Ct. at 4. Stipulations of dismissal constitute judgments under Mass.R.Civ.P. 58.[13] In this case, the Stipulation of Dismissal makes express reference to the Settlement Agreement whereby Awan obtained control of TCC and the right to reimbursement of up to $395,000 in attorneys fees and expenses. It therefore constitutes a judgment in Awan’s favor within the meaning of G.L.c. 221, §50. See Cohen, supra, 38 Mass.App.Ct. at 4-5.
TCC points out that Rule 58 deals with the ministerial task of entry of judgment as opposed to the judicial act of rendering judgment. See Reporters’ Notes — 1973. There is no basis, however, for TCC’s argument that “judgment” under §50 is limited to judicial renditions of judgments and excludes “ministerial” entries of judgment. General Laws c. 221, §50 expressly refers to judgments “entered or made.”[14]
This conclusion is supported by consideration of the 1945 amendment to the Attorney’s Lien Statute. The statute previously allowed liens only to attorneys “lawfully possessed of an execution, or who . . . prosecuted a suit to final judgment in favor of his client.” By expanding the language, the Legislature enabled counsel such as HAS to reach settlement proceeds. See Collins v. Town of Webster, 25 Mass.App.Ct. 745, 749-50 (1988) (“The language added to the statute by the 1945 amendment would affect a case which terminated with a monetary settlement favorable to the client”). A narrow construction of the language “order in his client’s favor” to exclude situations, like the present case, which involve dismissal with prejudice pursuant to a settlement agreement which provides for the payment of monies to or on behalf of the plaintiff would defeat the principal purpose of the Attorney’s Lien Statute.
The Settlement Agreement requires TCC to reimburse plaintiffs up to $395,000 of litigation costs of this action, including HAS’s legal fees. As approximately $270,000 of the $300,000 disbursement which was subject to the lien was used, contrary to the terms of the Settlement Agreement, to pay margin calls on Awan’s TCC stock held in Prudential’s account, plaintiffs direct and indirect interest in that stock is subject to the lien.
C. Whether Any Proceeds Existed to Which the Lien Could Attach
TCC next claims that it is not liable to HAS for the disbursed funds because it had no valid notice of an attorney’s lien and no lien existed before it transferred the $300,000 to Techman. Neither of these contentions squares with the law or the facts.
TCC had actual notice of the lien on November 20, 1998, before this action was dismissed with prejudice, when HAS sent a copy of the notice by facsimile to its counsel. Neither Awan nor TCC contests the fact that the notice had been filed when the Stipulation of Dismissal was approved. HAS’s lien, which was effective from the commencement of the action, matured upon the Court’s approval of the Stipulation of Dismissal. As the Settlement Agreement, by its terms, did not become effective until the action was dismissed, the lien’s existence preceded disbursement of the settlement proceeds.
The timing of the Settlement Agreement and initial disbursement as well as TCC’s counsel’s repeated false, albeit good faith, denial to HAS that funds had been disbursed until the eve of the hearing suggests collusion by Awan and TCC, which Awan now controls pursuant to the Settlement Agreement, to circumvent the lien. Under the circumstances of this case, the Court finds that HAS’s Notice of Attorney’s Lien was valid and that the lien attaches to the settlement proceeds. See Gagne v. Cedar Development Co., 32 Mass.App.Dec. at 76 (attorney’s lien may not be defeated by a secret settlement between the parties without the knowledge of plaintiffs attorney).[15] The $300,000 was transferred subject to the lien. All affected parties acted with knowledge of the lien.[16] The Court therefore rules that, pending determination of the amount of the lien, HAS is entitled to the injunctive relief sought absent a'deposit by Awan of $300,000 into an escrow account.[17]
II. Jurisdiction of this Court
TCC and Awan next assert that the Court lacks jurisdiction over this matter because this action has been dismissed with prejudice. This argument is without merit. Although the underlying action has been fully adjudicated on the merits, the Court retains jurisdiction over HAS’s claim to an attorney’s lien. See, e.g., Boswell v. Zephyr Lines, Inc., 414 Mass. 241 (after settlement, court in same action ruled on existence and enforcement of attorney’s lien among co-counsel); In re Leading Edge Products, Inc., 121 B.R. 128 (D.Mass. 1990) (following litigating parties’ execution of mutual releases, court in same action determined counsel’s claim to lien).
III. Need for and Harm from Injunction
In contravention of the Settlement Agreement and in an apparent effort to defeat the lien through collusion, Awan used approximately $270,000 of the $300,000 disbursement of settlement proceeds to meet margin calls for his TCC stock. I find that the requested injunctive relief is required to protect HAS’s claim. Neither Awan nor TCC has established, apart from general assertions, that the requested injunction will jeopardize assets of other stockholders. Unless Awan deposits $300,000 into an escrow account, the Court will not permit him to deplete the value of his TCC stock by exercising check-writing and credit card privileges against the margin account.
ORDER
For the foregoing reasons, it is hereby ORDERED that, pending determination and enforcement of HAS’s lien:
*660 (a) Awan shall not sell or otherwise alienate his shares of TCC stock nor transfer the shares from the Prudential Securities, Inc. account in which the shares are presently held;
(b) Awan shall not cause Techman to sell or otherwise alienate its shares of TCC stock nor transfer the shares from Techman’s Prudential account in which the shares are presently held;
(c) Awan shall not increase the current indebtedness of his Prudential account in which his TCC stock is held nor shall he, in any manner, further encumber the TCC stock, nor cause Techman to increase the current indebtedness of the Prudential account in which Techman’s shares of TCC stock are held, or to further encumber the TCC stock;
(d) In the event Awan elects to sell other securities in the account in which the TCC stock is held in a manner that reduces the gross value of the account, Awan shall reduce the indebtedness of the account by a pro-rata amount;
(e) In the event Techman elects to sell other securities in the account in which the TCC stock is held in a manner that reduces the gross value of the account, Awan shall cause Techman to reduce the indebtedness of the account by a pro-rata amount;
(f) Nothing in this order is intended to or shall prevent Prudential from selling securities in these accounts to meet preexisting margin obligations of Awan or Techman, PROVIDED THAT this injunction shall be vacated upon the deposit by Awan of $270,000 with an escrow agent satisfactory to HAS.
It is further ORDERED that Awan provide a complete accounting of all transactions in the accounts containing TCC stock standing in the name of Awan and/or Techman since November 19, 1998.
It is further ORDERED that any additional proceeds disbursed by TCC pursuant to the Settlement Agreement be deposited in an interest bearing escrow account pending final resolution of the amount and enforcement of HAS’s attorney’s lien.

Awan and Phalon are two of four members and stockholders of the Phalon Group, which retained HAS for this litigation.

Nhe Settlement Agreement provided for additional payments to Awan of up to $50,000 by September 30, 1999 and $45,000 by September 30, 2000.

 The Certificate of Service of HAS’s Notice of Attorney’s Lien states that HAS sent the notice by facsimile and first class mail to counsel for TCC on November 20, 1998. The docket sheet reflects that the notice which is dated November 20, 1998 was filed with the Court on November 23, 1998.

The Stipulation of Dismissal is dated October 20, 1998, an apparent error.

The wire transfer was confirmed at 3:00 p.m. on November 23, 1998. Because the Settlement Agreement was not effective until the action was dismissed, the Court is assuming that the dismissal preceded the disbursement.

 At the hearing, counsel for TCC acknowledged that such assurances were given to HAS. HAS has not suggested that counsel for TCC had any reason to believe that its representations to HAS were false.

 Awan explains that under Securities and Exchange Commission regulations, margin stock cannot be encumbered or removed without paying off any underlying obligations.

 Moreover, the docket and case file evidence extensive legal services rendered by HAS in its representation of plaintiffs in this action. See Miller v. Norton, 353 Mass. 395, 399 (1967) (court may take judicial notice of docket entries and papers recorded therein).

Two issues which remain to be determined are: 1) identification of services rendered and expenses incurred which are covered by the lien; and 2) determination of the reasonableness of those fees and expenses.

Awan concedes that attorney’s liens may attach to settlement proceeds.

Rule 58 reads in part: “Every judgment shall be set forth on a separate document; but when any party files an agreement for judgment, or a notice or stipulation of dismissal pursuant to Rule41(a)(l), the agreement, notice or stipulation '. . . shall, upon being filed, constitute the judgment, for all purposes, and no separate document need be prepared. A judgment is effective only when so set forth or filed and when entered as provided in Rule 79(a) [governing civil docket entries by clerk].”

Although the decisions are not uniform on this issue, no binding precedent exists. Compare Gagne v. Cedar Development Co., Inc., 32 Mass. App. Dec. 71, 76 (1960) (attorney’s lien attaches to settlement proceeds) with Craft v. Kane, 9 Mass. L. Rptr. No. 6, 121, 122 (Nov. 30, 1998) (Whitehead, J.) (attorney’s lien does not reach settlement proceeds). Apart from Craft, supra, in practice, Section 50 has applied to settlement proceeds. See Gil-Wal Corporation v. Painewebber, Inc., 734 F.Sup. 566, 568 (D.Mass. 1990) (enforcing attorney’s lien on settlement proceeds); Smith v. Consalvo, 37 Mass.App.Ct. 192, 194 n. 3 (1994) (counsel moved successfully to have portion of settlement proceeds deposited in escrow pending further order on motion to enforce attorney’s lien). See also In Re: Leading Edge Products, Inc., 121 B.R. 128 (D.Mass. 1990), where the Court opined in dicta, “It seems likely . . . that the drafters of Section 50 contemplated the existence of a fund, either made up of cash or capable of being reduced to cash, generated from a judgment decree or other order, including an order approving a settlement.” Id. at 129, 131 (attorney’s lien could not attach to a settlement absent a monetary exchange). Here, as stated above, the Stipulation of Dismissal made express reference to the Settlement Agreement which was not effective until the order dismissing the litigation issued. (¶13.)

Moreover, because TCC disbursed the proceeds after having notice of the lien, it may be liable to HAS for the amount improperly disbursed. See In re Hoy’s Claim, 93 F.Sup. 265, 266 (D.Mass. 1950).

As stated above, TCC is wholly-owned by Awan.

Absent further order of the Court, the balance of the settlement proceeds, pending determination of the amount of the lien, shall, when payment becomes due, be deposited in an escrow account.