NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

22-P-729                                        Appeals Court


JANE DOE[1]  vs.  JAMPA GONPO[2] & another.[3]


No. 22-P-729.

Franklin.     May 3, 2023. - September 7, 2023.

Present:  Massing, Ditkoff, & Singh, JJ.


Practice, Civil, Action to reach and apply, Judgment, Injunctive
     relief, Attorney's fees, Costs.  Injunction.  Lien.
     Attorney at Law, Lien.



Civil action commenced in the Superior Court Department on
February 4, 2020.

Motions for postjudgment security and for a permanent
injunction were heard by Michael K. Callan, J.


Joshua M. Daniels for the plaintiff.
Tiffany Troy for Troy Law, PLLC.


MASSING, J.  A Superior Court jury awarded the plaintiff,

Jane Doe, $10 million in damages for sexual assault and

_____

[1] A pseudonym.

[2] Also known as Jampa Golam.

[3] Troy Law, PLLC, as a reach and apply defendant.

emotional distress inflicted upon her by the defendant, Jampa Gonpo.  To secure partial payment of her award, Doe sought to reach and apply a judgment that had been awarded to Gonpo in a Federal action.  A Superior Court judge issued orders for postjudgment security and for a permanent injunction, allowing Doe to reach and apply only part of Gonpo's Federal judgment, ruling that Gonpo's attorneys in the Federal action, Troy Law, PLLC (Troy Law), had a superior interest in the portion of the Federal judgment representing its reasonable attorney's fees and costs.  Doe appeals from the aspects of the orders precluding her from reaching the fees and costs awarded in the Federal case.  We affirm.

Background.  In 2008, Gonpo immigrated to the United States from Nepal and, upon arrival, lived with Doe's family for several months.  In addition, he worked for Doe's father's stonemasonry business from the time he arrived in the United States until 2015.  In 2016, a Franklin County grand jury returned seven indictments charging Gonpo with various sex offenses against Doe, starting when Doe was approximately eight years old and Gonpo was living with Doe's family.[4]  The

---

[4] Two of the indictments charged rape of a child under sixteen, aggravated by age difference; two charged rape and abuse of a child under sixteen; and three charged indecent assault and battery on a child under fourteen.

Commonwealth nol prossed three of the indictments, and a jury acquitted Gonpo of the remaining charges after a trial in March 2018.

Meanwhile, while Gonpo was in custody awaiting trial on the criminal charges, on September 27, 2016, Troy Law commenced a Federal lawsuit on behalf of Gonpo against Doe's father and his business for wage payment violations, asserting claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 et seq., and several Massachusetts wage laws: the wage act, G. L. c. 149, § 148; and the minimum wage and overtime statutes, G. L. c. 151, §§ 1 and 1A. On January 3, 2020, a Federal jury handed down a verdict for Gonpo; however, the full extent of Gonpo's damages was not determined until April 1, 2021, when the Federal judge issued a memorandum and order directing the entry of judgment awarding Gonpo compensatory damages of $181,426.37, attorney's fees totaling $97,954.75, and costs amounting to $8,285.94 (Federal judgment).

Doe commenced this Superior Court civil lawsuit against Gonpo on February 4, 2020, approximately one month after the verdict in the Federal lawsuit, but more than one year before that judgment would enter. To attach Gonpo's interest in the Federal verdict, which appeared to be his only asset, Doe named her father and his business as reach and apply defendants. On February 28, 2020, Doe obtained a preliminary injunction

prohibiting Gonpo from transferring or assigning his interest in the Federal verdict and restraining Doe's father and his business from disbursing any funds to Gonpo.

On November 19, 2021, more than seven months after the Federal judgment entered, Doe prevailed in her civil action against Gonpo, and the jury awarded her $10 million in damages. Judgment entered on November 29, 2021, awarding Doe a total of $12,184,930, inclusive of accrued prejudgment interest and costs.[5]  On December 2, 2021, the trial judge allowed "without prejudice" Doe's postjudgment motion to make permanent the provisions of the preliminary injunction, pending additional briefing and further argument.

On December 22, 2021, Troy Law filed an appearance in Doe's Superior Court suit as a party in interest and submitted an opposition to so much of Doe's request for a permanent injunction as sought to attach the portion of the Federal judgment allocated to attorney's fees and costs.[6]  On February 8, 2022, a Superior Court judge other than the trial judge (motion judge) issued a decision and order allowing Doe's motions for postjudgment security and for a permanent injunction only as to

---

[5] On December 15, 2021, an amended judgment reflecting two additional days of prejudgment interest was entered, bringing Doe's total award to $12,191,510.

[6] Pursuant to court order, Doe amended her complaint to name Troy Law as a reach and apply defendant.

the portion of the Federal judgment representing compensatory damages and interest, ruling that Troy Law had a superior interest in the attorney's fees and costs portion of the award. In effect, this means that Troy Law will receive the fees and costs portion of the Federal judgment and Doe will receive the balance.

Discussion. Doe contends that the entire Federal judgment, including attorney's fees, was awarded to Gonpo, and she has a priority interest over Troy Law in the fees because she obtained an equitable lien before Troy Law sought to assert or enforce its attorney's lien and before the attorney's lien matured. We review for error of law or abuse of discretion the motion judge's decision to limit the scope of the permanent injunction to the portion of the Federal judgment representing compensatory damages and interest. See LightLab Imaging, Inc. v. Axsun Techs., Inc., 469 Mass. 181, 194 (2014).

1. Gonpo's interest in the award of attorney's fees and costs. Doe asserts that the motion judge erred by ruling that the fees and costs portion of the Federal judgment was not awarded to Gonpo, but directly to Troy Law, and therefore was not an interest of Gonpo subject to an action to reach and apply. See G. L. c. 214, § 3 (6) (providing for equitable jurisdiction of "[a]ctions by creditors to reach and apply, in

payment of a debt, any property, right, title or interest, legal or equitable, of a debtor").  We agree.

As a matter of fact, the judgment in the Federal case was "entered for the plaintiff Jampo Gonpo."  The Federal judge's order on the issue of damages likewise concluded by stating, "Plaintiff is awarded $181,426.37 in damages, $97,954.74 in attorneys' fees, and $8,285.95 in costs."  No part of the judgment was awarded to Troy Law.

As a matter of law, Gonpo's Federal lawsuit was based on claims brought under Massachusetts wage laws and the FLSA.  The Federal judge's order is clear that damages, including attorney's fees and costs, were awarded to Gonpo under Massachusetts law based on the Federal doctrine that allows a successful plaintiff with overlapping State and Federal claims to choose the more advantageous result.[7]  See Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 146 (1st Cir. 2009) ("When federal and state claims overlap, the plaintiff may choose to be awarded damages based on state law if that law offers a more generous outcome than federal law").

---

[7] The Federal judge observed that compared to the FLSA, the Massachusetts wage laws mandate a higher minimum wage, allow recovery of wages that are not timely paid, provide for mandatory treble damages, permit recovery of both prejudgment interest and treble damages, and prohibit good faith defenses.

The Massachusetts wage laws at issue provide, in almost identical language, that attorney's fees and costs, in addition to damages, are to be awarded to the prevailing "employee."  See G. L. c. 149, § 150 ("An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys' fees"); G. L. c. 151, § 20 ("An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any loss of minimum wage and shall also be awarded the costs of the litigation and reasonable attorneys' fees").  This language clearly and unambiguously requires attorney's fees and costs to be awarded to the employee, rather than to the employee's attorney.  See DiMasi v. Secretary of the Commonwealth, 491 Mass. 186, 192 (2023) ("We have recognized the word 'shall' as an imperative that indicates the Legislature's intent to prescribe a mandatory act").  This interpretation aligns with Massachusetts decisions concerning other fee-shifting statutes, which consistently state that fees are awarded directly to the prevailing party, not to the party's attorney.  See Kadlick v. Department of Mental Health, 431 Mass. 850, 856-857 (2000); Cambridge Trust Co. v. Hanify & King Professional Corp., 430 Mass. 472, 479 (1999).  Troy Law's attempt to distinguish the Massachusetts wage laws from other

fee-shifting statutes is unpersuasive.  See Finance Comm'n of Boston v. Commissioner of Revenue, 383 Mass. 63, 68 (1981) ("only positive demonstration of contrary legislative purpose can overcome plain text").  Nor are we moved by Troy Law's reliance on James v. Home Constr. Co. of Mobile, 689 F.2d 1357, 1358 (11th Cir. 1982), in which the court held that "it is the attorney who is entitled to fee awards in a [Truth in Lending Act] case, not the client."  James decidedly represents the minority view in the Federal courts and was all but repudiated by the United States Supreme Court in Evans v. Jeff D., 475 U.S. 717, 730-732 & nn.18, 19 (1986), superseded by statute on other grounds.  The entire Federal judgment, including attorney's fees and costs, was awarded to Gonpo.

2.  Priority of interests.  Troy Law and Doe have competing liens on Gonpo's Federal judgment.  Troy Law holds an attorney's lien under the Massachusetts attorney's lien statute, G. L. c. 221, § 50, securing the attorney's fees owed to it by Gonpo for representing him in the Federal action.  Doe was permitted to reach and apply Gonpo's interest in the Federal judgment to satisfy her Superior Court judgment against Gonpo.  Doe asserts that her lien was perfected before Troy Law's and that she therefore "has priority under the principle of first in time, first in right."  PGR Mgt. Co. Health Props. v. Credle, 427 Mass. 636, 640 (1998).  A close analysis of the nature and

timing of the competing liens shows that Troy Law's attorney's lien has priority.

General Laws c. 221, § 50, provides, in relevant part, "From the authorized commencement of an action, counterclaim or other proceeding in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom." Under the statute, an "inchoate lien" in favor of the attorney arises upon the filing of the action or counterclaim and "mature[s] upon entry of judgment" for the client. PGR Mgt. Co. Health Props., 427 Mass. at 640. Once the judgment is entered, the lien relates back to the day the action was commenced. See In re Albert, 206 B.R. 636, 640 (Bankr. D. Mass. 1997) (under Massachusetts law, attorney's lien "relates back to the date the action was filed"); 51 Am. Jur. 2d Liens § 8, at 97 (2021) ("When an inchoate lien becomes consummate, the priority of its enforcement relates back to the date the lien was created").

Here, an inchoate attorney's lien arose in favor of Troy Law when it brought the Federal lawsuit on Gonpo's behalf on

September 27, 2016.  It matured when judgment entered on April 1, 2021, relating back to the date of commencement.

Doe contends that Troy Law's interest remained inchoate "long after" she obtained an enforceable interest in the Federal judgment.  In support of this assertion, Doe argues that she perfected her lien when she obtained the preliminary injunction on February 28, 2020, because she had satisfied all the requirements for a reach and apply action, whereas Troy Law's lien was still inchoate pending entry of the Federal judgment. We are not persuaded by Doe's analysis, for two reasons.

First, Doe did not and could not have established an essential element of her reach and apply claim -- the existence of a debt owed to her -- before she prevailed against Gonpo in her Superior Court case.[8]  See Massachusetts Elec. Co. v. Athol One, Inc., 391 Mass. 685, 687 (1984) (first step in statutory reach and apply action is to "show the existence of a debt owed").  As a result, the preliminary injunction created no more than an equitable lien in Doe's favor.  See McCarthy v. Rogers, 295 Mass. 245, 247 (1936) (temporary injunction preventing

---

[8] Because Gonpo was found not guilty of the criminal charges and, in any event, brought the Federal lawsuit prior to the criminal trial, we need not consider whether a criminal conviction, with the resultant collateral estoppel consequences, see Metropolitan Prop. & Cas. Ins. Co. v. Morrison, 460 Mass. 352, 364 (2011), would effectively establish the existence of a debt owed to the victim of the crime.

assignment of defendant's property sought to be reached and applied toward payment of debt owed to plaintiff, if established, created equitable lien upon property); Bank of New England, N.A. v. Mortgage Corp. of New England, 30 Mass. App. Ct. 238, 242 (1991) (same); In re Osgood, 203 B.R. 865, 869 (Bankr. D. Mass. 1997) ("upon both the filing of an action to reach and apply and the issuance of an injunction restraining the transfer of the property sought to be reached and applied . . . the plaintiff acquire[s] an equitable lien or equitable attachment upon the property").  Because the existence and amount of Doe's lien turned on the outcome of her civil suit, the lien Doe obtained by way of the preliminary injunction -- after the Federal verdict in Gonpo's favor, but before judgment entered -- like Troy Law's at that time, was inchoate.  See United States v. Acri, 348 U.S. 211, 214 (1955) (attachment lien inchoate where "at the time the attachment issued, the fact and the amount of the lien were contingent upon the outcome of the suit for damages").

Troy Law's lien became enforceable on April 1, 2021, upon entry of the Federal judgment.  At the time, Doe's interest in the Federal judgment was still inchoate because her Superior Court claims were pending.  Doe's interest did not become enforceable until, at the earliest, she obtained the jury verdict in her favor on November 19, 2021.

Second, even if Doe had perfected her reach and apply interest before April 1, 2021, while Troy Law's lien was inchoate and had not yet become enforceable, Troy Law's lien would still have priority.  This is because, whenever Troy Law's inchoate attorney's lien matured, it would relate back to the date the Federal lawsuit commenced, September 27, 2016.  This result is dictated by the language of G. L. c. 221, § 50 ("[f]rom the authorized commencement of an action . . . the attorney who appears for a client in such proceeding shall have a lien"), and is consistent with case law holding that an attorney's lien arises upon the commencement of an action,[9] see Craft v. Kane, 51 Mass. App. Ct. 648, 650-651 (2001) (treating notice of lien, filed after attorney withdrew from case, as dating back to commencement of suit); Hayes v. Department of Revenue, 44 Mass. App. Ct. 905, 905 (1997) (attorney's lien "commenced" same day attorney brought action and had priority over tax liens that arose after commencement, but before settlement, of action).

Doe nevertheless asserts that Troy Law was required to file a notice of lien or otherwise assert its attorney's lien in the Superior Court to obtain an enforceable interest.  Doe argues

---

[9] Assuming, but not deciding, that Doe's reach and apply interest related back to the date she obtained the preliminary injunction, Troy Law's attorney's lien would still predate Doe's interest.

not only that Troy Law was aware of Doe's suit against Gonpo, but also that one of its attorneys was present in the Superior Court for the preliminary injunction hearing in Doe's action to reach and apply, yet it failed to assert its interests until after judgment had entered for Doe.  Doe relies on language in Cohen v. Lindsey, 38 Mass. App. Ct. 1, 5 (1995), in which we stated that an attorney's lien had priority over the interests of the Federal Deposit Insurance Corporation (FDIC), which had intervened to establish a claim to an escrow fund, because the attorney "preempted the FDIC by filing first in the Superior Court the appropriate notice of lien."  The Cohen decision also recognized, however, that "[t]he [attorney's] lien takes effect from the authorized commencement of an action or any proceeding in any court."  Id.  Even if the attorney in Cohen had filed a notice of lien after the FDIC had moved to intervene, the attorney's lien would still have priority as it related back to the commencement of the case.  To the extent filing a notice of lien is ever required to enforce an attorney's lien, here the existence and priority of Troy Law's attorney's lien on Gonpo's Federal judgment in no way depended on the filing of a notice of lien in Doe's Superior Court case.[10]

---

[10] The filing of a notice of lien might be required to prevent disbursement of funds paid into an escrow account pending resolution of the proceedings, as in Cohen, 38 Mass. App. Ct. at 3, or where the attorney who initially brought the

Therefore, the motion judge did not err or abuse his discretion in determining that because Troy Law's attorney's lien on the Federal judgment was "first in time," PGR Mgt. Co. Health Props., 427 Mass. at 640, Troy Law had a superior interest in the fees and costs portion of the Federal judgment. In short, Doe's action to reach and apply the Federal judgment did not vitiate Troy Law's attorney's lien securing its fees on that judgment. See Newton Hous. Auth. v. Cumberland Constr. Co., 5 Mass. App. Ct. 1, 8-9 (1977).

Conclusion. The orders for postjudgment security and for a permanent injunction are affirmed.[11]

So ordered.

---

action withdraws or is discharged. See Black, Attorneys' Liens in Massachusetts, 43 Mass. L.Q. (No. 3) 33, 38 (1958). Such notice, however, would normally be filed in the proceeding in which the attorney's lien arose; here, Gonpo's Federal court case. See G. L. c. 221, § 50; Neuwirth v. Neuwirth, 87 Mass. App. Ct. 640, 641 (2015); McCann, The Attorney's Lien in Massachusetts, 69 Mass. L. Rev. 68, 83 (1984).

[11] Troy Law's request for appellate attorney's fees and costs is denied.